(116 So. 520)

### NYHOFF v. PALMER. (8 Div. 972.)

Supreme Court of Alabama. April 12, 1928.

**1. Brokers** ⊚⊃82(1)—Complaint held sufficient on demurrer to show contract to procure purchase of land on commission basis.

Complaint alleging that defendant employed plaintiff as broker to procure purchase of certain land, that it was "understood" that plaintiff's compensation would be 5 per cent. of purchase price, it being "further understood" that purchase would be made on basis of gross price and such compensation deducted by vendors from amount received by them and paid over to plaintiff, and that vendors consented to such arrangement, *held* sufficient on demurrer to show contract of employment on commission basis; expressions, "it was understood" and "further understood," importing agreement on matters alleged.

**2. Brokers** ⊚⊃82(1)—Complaint held sufficient on demurrer to show broker's performance of contract to procure purchase of land.

Complaint in broker's action for commission for procuring purchase of certain land, *held* sufficient on demurrer to show plaintiff's performance of contract by negotiations resulting in agreement as to price and terms fully complied with by vendors.

**3. Pleading** ⊚⊃21—Complaint in action for commission for procuring purchase of land held not demurrable for repugnancy between written transaction set forth in telegrams and other allegations.

Complaint averring contract of employment to procure purchase of certain tract for defendant for commission figured on price agreed on, which was to include commissions to be paid to vendors and by them to plaintiff, and negotiations resulting in agreement as to price and terms, *held* not demurrable for repugnancy between written transaction, set forth in telegrams requesting, directing, and advising of acceptance of offer of certain price per acre, and other allegations.

**4. Attorney and client** ⊚⊃63—Attorney employed to pass on title to land, cause survey and map to be made, prepare or approve deeds, etc., becomes client's agent.

Attorney employed by prospective purchaser of land to examine and pass on title, cause survey and map to be made, work out other details of transaction for absent client, and prepare or approve deeds and other documents to close transaction, becomes agent as well as attorney for client.

**5. Witnesses** ⊚⊃201(1)—Attorney's employment, authority, instructions, and communications to client in course of executing duties calling for negotiations with fellow agents and vendor for purchase of land, are not privileged.

Where attorney's relation with client calls for contact and negotiations with fellow agents and vendor of land sought to be purchased by client, attorney's employment and authority, instructions given him, and his communications to client in course of executing duties and final report, constitute part of res gestæ of transaction, and hence are not privileged communications in suit involving such transactions.

**6. Witnesses** ⊚⊃201(1)—Telegrams between purchaser and his attorney held admissible in broker's action for commission for procuring purchase of land.

In broker's action for commission for procuring purchase of land, telegrams between defendant and his attorney, directing latter to pass on property as well as titles and accept same if satisfactory and to notify vendors that deal was off, *held* admissible as pertaining to working out of details in course of attorney's agency and to communications with plaintiff.

**7. Brokers** ⊚⊃82(4)—Broker's telegram to principal that land was "best buy" in district held admissible in action for commission, though copied in complaint as "biggest buy."

Broker's telegram to principal, stating that land for purchase of which he was negotiating is "best buy" in district, *held* not inadmissible because of variance in that quoted words were copied into complaint as "biggest buy"; purpose of clause in either case being to boost property as good buy.

**8. Witnesses** ⊚⊃232—Question whether defendant purchaser insisted on survey held properly disallowed in broker's action for commission, where survey had been shown by telegrams.

In broker's action for commission for procuring purchase of land, question to defendant as to whether he insisted on survey showing location of high-water mark and contour *held* properly disallowed, where making and approval of requested survey had already been shown by telegrams in evidence.

**9. Witnesses** ⊚⊃232—Question as to defendant's insistence on delivery of deed, etc., for examination, held properly disallowed in broker's action for commission in view of written communications in evidence.

In broker's action for commission for procuring purchase of land, question to defendant

---

⊚⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as to whether he ever received, and at all times insisted on delivery of deed, mortgage, and survey for examination before closing transaction, *held* properly disallowed, where all communications were in writing and in evidence, and telegrams subsequent to that sought to be contradicted by his testimony fully showed plaintiff's insistence on delivery of documents to him for examination.

**10. Brokers ☞86(1)—Evidence held to warrant finding in broker's action for commission for procuring purchase of land, that defendant demanded that vendors mail deed to him for inspection.**

In broker's action for commission for procuring purchase of land for defendant, evidence *held* to warrant conclusion, that defendant was demanding that vendors send deed as well as other documents to defendant by mail for inspection before closing deal.

**11. Brokers ☞63(1)—Vendors' objection to mailing deed to purchaser for inspection held not ground for calling off deal.**

Vendors' objection to sending deed to purchaser by mail for inspection as demanded by latter before closing deal, *held* not ground for calling off the deal.

**12. Brokers ☞63(1)—Purchaser's refusal of vendors' offer to send papers for inspection by messenger instead of mail, held not justified.**

Purchaser's refusal of vendors' offer to send all papers to purchaser by messenger for inspection, instead of by mail as demanded by purchaser before closing deal, *held* not justified.

**13. Brokers ☞85(8)—Evidence that vendors sent papers to defendant purchaser by messenger and latter's interview with defendant held admissible in broker's action for commission.**

In broker's action for commission for procuring purchase of land for defendant, evidence that vendors sent deed and other papers to purchaser by messenger for inspection, and interview between latter and defendant who demanded that they be mailed to him, *held* properly admitted.

**14. Brokers ☞88(2)—Existence of contract to procure purchase of land held for jury on conflicting evidence.**

Existence of contract of employment to procure purchase of land for defendant as averred in complaint for commissions, *held* for jury on conflicting evidence.

**15. New trial ☞72—Refusal of new trial on ground that verdict for broker suing for commission for procuring purchase of land was against weight of evidence, held not error.**

Refusal of new trial on ground that verdict for broker in action for commission for procuring purchase of land was contrary to weight of evidence as to agreement for commissions, *held* not error.

**16. Brokers ☞85(9)—Broker's reference to vendors as his clients was circumstance for jury's consideration in action against purchaser for commission.**

Broker's reference to vendors as "my clients" in later stages of transaction was a circumstance to be considered by jury with whole evidence in action against purchaser for commission for procuring purchase.

**17. Brokers ☞65(4)—Broker may render services for both parties to land sale contract in bringing them together, commissions to be paid as agreed by all.**

Services may be rendered for both parties by broker, in bringing them together on deal for purchase of land, commissions to be paid in manner known and agreed to by all parties.

**18. Trial ☞260(1)—Refusal of charge covered by other instructions is not error.**

Refusal of charge which is fully covered by other instructions is not error.

Appeal from Circuit Court, Colbert County; Chas. P. Almon, Judge.

Action by James H. Palmer against John J. Nyhoff. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint is as follows:

Plaintiff claims of the defendant the sum of Seven Thousand Dollars, with interest from February 26, 1926, for this, to wit:

On, to wit, January 25, 1926, defendant employed plaintiff as a broker to procure for him the purchase of a certain tract of land in Lauderdale County, Alabama, consisting of four hundred forty-five acres, the said tract being the property fronting on the Tennessee river and on the Lee Highway, and on Shoal Creek, and being owned by T. M. Rogers, and B. A. Rogers, and W. H. Mitchell. Plaintiff as agent for the defendant and under his commission made several calls on the owners of said tract, and undertook to negotiate a purchase for the defendant. It was understood between plaintiff and defendant that plaintiff's compensation would be 5 per cent. of any purchase price that might be paid, it being further understood that the purchase would be made by the defendant on the basis of the gross price to be paid, and plaintiff's compensation to be deducted by the vendors from the amount received by them; and that such deduction would be paid over to the plaintiff; and the said vendors consented to and agreed on such arrangement and payment. After considerable negotiation defendant went to Miami, Florida, and negotiations between defendant and plaintiff and the said owners were continued between defendant at that point and the other parties in the Muscle Shoals district. On, to wit, January 29, 1926, plaintiff telegraphed to defendant at Miami, Florida, as follows:

"Tuscumbia, Ala., Jany. 29th, 1926.

"To John J. Nyhoff, 13 Flagler Street, Miami, Fla.

"Will you make offer of three hundred per acre for the Rogers four hundred thirty acres

lake property. Terms one fifth, cash, balance in four equal annual payments Stop I think I can deliver on this basis and its the biggest buy in lake property in entire district.

"Answer: Regards.          J. H. Palmer."
"Paid charge phone 464."

On the same date defendant answered the said telegram from Miami, Florida, in a communication delivered by the Western Union Telegraph Company, said answer being in words and figures as follows, to wit:

"Miami Fla. Jan. 29, 1926.
"Jas. H. Palmer, Mayor, Tuscumbia, Ala.

"Make offer of three hundred dollars on river property inspected by us containing about four hundred twenty acres on following conditions that all land purchased must be' above high-water level and that water level the year around is about the same as when we inspected property these were facts that you were certain to when we were on property understand there is hundred and thirty acres adjacent to this property along the lake almost to the Drane cottage I would purchase this hundred and thirty acres at two hundred seventy five dollars per acre in connection with the four hundred twenty acres on the latter piece Joe Hermans would have to receive half of the commission as he is working on this deal.

"John J. Nyhoff."

On the day following the said telegram received above mentioned, to wit: January 30, 1926, plaintiff negotiated with the said land owners and procured an acceptance of the said offer so communicated in his telegram by the defendant, and the said owners requested a larger cash payment but agreed to accept the cash payment and terms specified by defendant. The said owners also requested that the defendant pay down as much as five thousand dollars as a binder and to guarantee his good faith in the matter of said purchase. Thereupon plaintiff sent by Western Union Telegraph Company to the defendant at Miami, Florida, an acceptance of his offer previously made and above set out, said acceptance being in words and figures as follows, to wit:

"Tuscumbia, Ala. Jany. 30th, 1926.
"John J. Nyhoff, 13 Flagler Street, Miami, Fla.

"Yours twenty-ninth. Your proposition Rogers land accepted Stop If agreeable with you owners like very much to have half or third cash but if not agreeable can close fifth cash and balance four equal payments as per wire Stop Please send five thousand binder Stop Owners will furnish satisfactory survey and deliver warranty deed to all acreage above five hundred five contour and quit claim without charge all below five hundred five contour Stop Price three hundred per acre for all land warranted Stop Regarding hundred thirty acres am handling with Herman and will advise later Business fine Regards.          J. H. Palmer."
"Paid Charge 464."

Subsequent to plaintiff's procurement for the defendant of the acceptance by the said owners of defendant's offer, and on, to wit, January 30, 1926, the defendant by Western Union telegram acknowledged the said acceptance and the closing of said contract by his Western Union telegram in words and figures as follows, to wit:

"Miami, Fla. Jan. 31, 1926.
"James Palmer, Mayor, Tuscumbia, Ala.

"Your wire received have wired my attorney Mr. Andrews of sale and purchase I will not put up binder as my word is good to accept property if all conditions are met with as agreed upon am wiring Herman tonight get in touch with him about property adjacent to your acreage this entire purchase must be kept in strict confidence advise all concerned.

"John J. Nyhoff."

Thereupon, thereafter, and immediately thereafter, plaintiff for the account of the defendant procured the said owners to proceed with the preliminaries to closing the sale of said lands in spite of defendant's refusal to put up binding money, and his insistence that his word was good and a sufficient guaranty on which the said owners might proceed with the transaction. According to directions thereupon and thereafter given by the defendant to his attorney, Mr. J. L. Andrews, of Sheffield, this plaintiff procured from the said land owners an abstract of title, and procured a survey of said lands to be made by Mr. P. S. Milner, a civil engineer of Sheffield, Alabama, employed for that purpose by the defendant. Thereafter, and in due course, and proceeding on continuous communications with the defendant, the survey and acreage of said lands were approved by the said civil engineer representing defendant, and the title to said lands as evidenced by the abstract of title delivered, was approved and certified to the defendant by his said attorney, J. L. Andrews; and all the land proposed to be purchased was above high-water level and the water level on said land the year round is about the same as when inspected by plaintiff and defendant.

Thereafter, plaintiff procured the said owners to execute a valid, warranty deed conveying the said lands to the said defendant, and the said deed was placed in the hands of the said J. L. Andrews, as attorney for defendant, and defendant was requested to execute the purchase-money documents as provided in the contract procured by plaintiff, and to make the cash payment as provided in said contract. Thereafter, and thereupon, the defendant requested that the surveys and title papers be delivered to him at Miami, Florida, for his inspection, and that such delivery be made by mail. The said owners, within their rights under the contract, offered to send said documents to Miami by messenger, but declined to trust them to the mail. Immediately thereupon the said defendant undertook by telegraphic communication to his said attorney, J. L. Andrews, to revoke his said contract above referred to and declined to go further with the consummation of the said purchase. Immediately thereafter plaintiff delivered the said title papers, surveys and abstracts to the defendant at Miami, Florida, the transmission being made by one John L. Hughston of Florence, Alabama, employed by plaintiff for that purpose, and the said Hughston did at once tender, deliver, the said documents to the said defendant for the consummation of said sale. The defendant declined to accept, or to inspect the said documents, and declined

to make any payment on account of the said purchase and declined to execute any purchase-money papers for the purpose of closing the said purchase, and declined to state any reason why he would not consummate the said transaction, nor why he had deceived plaintiff and the said owners by offering to purchase said lands and then declining to consummate the purchase when his terms were met; and the said defendant further declined to discuss his own claim as expressed in his said telegram of January 31, 1926, to the effect that his word was as good as his bond, and to the effect that he would not make a deposit on account of his said purchase because his word was good without any such deposit. And the said defendant has ever since declined and failed and refused to consummate the said purchase; and has failed and refused to pay this plaintiff his reasonable compensation to which he is entitled under the employment aforesaid. All to plaintiff's damage in the sum aforesaid.

The following are telegrams passing between defendant and his attorney:

"Miami Flo Jan. 31 1926.
"J L Andrews

"Personal Sheffield National Bank Bldg Sheffield Ala I am contemplating purchasing about 420 acres of land at Shoals Creek and Wilson Lake through Palmer of Tuscumbia this property is located as follows Starting at Shoals Creek bridge running along Main Road about a mile and a quarter on Lake Wilson side and from Shoals Creek bridge along Shoals Creek to Lake Wilson with frontage on Lake Wilson for a distance of about four tenths of a mile then along a straight line to the Main Road I am buying it on condition that the high and low water mark of Lake Wilson and Shoals Creek will not vary over a few feet of the present water level The plans that I have in mind demand the certainty of this phase your opinion by wire in this matter will be appreciated It is further understood the purchase price of this property is three hundred dollars per acre one fifth cash balance in four equal annual payments with interest at 6 per cent understand the present level according to government engineers is five hundred five contour and that this is the high water level all above that will be included in warranty deed the balance of the water frontage whatever rights they may have will be quit claim deeded if this is clear to you and you are satisfied as to the average water levels this will be your authority to proceed and examine title and accept same upon acceptance of title you wire me and I will instruct Mr Hard to mail check.    John J. Nyhoff"

"Sheffield Ala Feb 9, 1926

"John J Nyhoff Thirteen East Flagler St Miami Flo

"Your wire period have finished my study of this title and turned abstract back to Mitchell with six page letter stating my views and objections period he says all curative work suggested by me will be completed today period with curative work done title will be acceptable period will forward notes and mortgage to you tomorrow period only a few acres between five fifteen and five naught five and parties will warrant title to you about five naught five contour period present structure will never raise water above five naught five and we will have affidavit to this effect from one of US government engineers in charge of construction work period neither Milner nor I have any definite information about the one hundred and forty acre tract period Mitchell asks me to request you to make first payment thirty seven thousand dollars balance in one two three and four years to enable him to satisfy mortgage and pay agents commission without being compelled to borrow money at eight per cent period in your reply state whether you are willing to do this period  Shall deed recite actual consideration or ten dollars and other considerations          J L Andrews"

"Sheffield Ala Feb 9 1926

"John J Nyhoff Thirteen East Flagler St Miami Flo

"Milners report shows four hundred and forty-five and forty-four one hundredths acres in Mitchell tract above five naught five foot contour exclusive of land in road and shows about eight acres which government has right to flood to five fifteen foot contour period Mitchell willing to deed to center of road period title satisfactory to me period kindly wire me whether you want to close transaction if so I will prepare mortgage and send it to you together with abstract and all other papers including my opinion and will request Mitchell to send deed to you with draft attached for one fifth of purchase price          J L Andrews"

"Miami Flo Feb 19 1926

"J L Andrews Sheffield Ala

"Regarding the purchase of the Mitchell tract you may forward deed opinion of title and mortgages together with a sketch or tracing made by Milner showing just where the eight acres of flood land will be located between the five hundred five and five hundred fifteen contours I will expect deed for all property from five hundred five contour to the center of Lee Highway and I will only pay for the frontage on the Lee Highway to the property line I will only pay for the acreage that I can get free and clear title to without any government rights against the land and will expect deed however for the eight acres in question between the five hundred five and five hundred fifteen contour if on receipt of this telegram the deal cannot be put through on terms outlined by me please wire me if satisfactory forward all papers and I will return promptly if I had known in the first place that the government had any rights to any part of the land in question I would have negotiated on different terms this to justify my stand.          John J Nyhoff"

"Sheffield Ala Feb 21 1926

"John J Nyhoff 13 East Flagler St Miami Flo

"As to eight acres above 505 Mitchell and associates now have satisfactory deed from us this removed the last point of controversy papers all drawn and deal ready to close but Mitchell does not want to delay transaction by mailing papers to Florida.  J L Andrews"

"Miami Flo Feb 21 1926

"J L Andrews Sheffield Ala

"Sorry that Mitchell wont wait until papers and Milners map can be mailed to me you can notify him that deal is off and you can send me your bill for services to Miami regards

"John J Nyhoff"

Assignments of error 22, and 23 are as follows:

22. The court erred in sustaining the objection of plaintiff, appellee, to the following question propounded to defendant, appellant, by his attorneys: "Did you or not insist upon a survey of the land showing the location of the high-water mark and the contour in order that you might know definitely as to where it was?"

23. The court erred in sustaining the objection of plaintiff, appellee, to the following question propounded to defendant, appellant, by his attorney: "Now, Mr. Nyhoff state to the jury whether you ever received and whether you were at all times insisting upon a delivery to you for your examination the deed, the mortgage on the property and the survey showing to you the contour line, before closing the transaction."

These charges were refused to defendant:

(6) The court charges the jury that in order for the plaintiff to recover any commission from defendant for the sale of the Mitchell-Rogers lands the jury must believe from the evidence that there was a contract and agreement between plaintiff and defendant for defendant to pay said commission and if there was no such agreement, then you must find for the defendant.

(7) The court charges the jury that you cannot find a verdict for the plaintiff if you are reasonably satisfied from the evidence that defendant was not given an opportunity to inspect the papers including deed, mortgage, and map of the land before the transaction was declared off.

(9) The court charges the jury that if they believe from the evidence that defendant told plaintiff that he would give $300 per acre, for the Mitchell-Rogers tract of land provided the terms and conditions satisfactory to defendant were complied with, and that said terms and conditions were not complied with satisfactory to defendant and there was no sale of said lands, the plaintiff cannot recover.

(10) If the jury believe from the evidence that defendant requested the papers including the survey be sent to him so that he could look to the question of water levels, and the owners objected to sending them then Nyhoff had the right to stop negotiations, and call the trade off.

Kirk & Rather, of Tuscumbia, and Andrews, Peach & Almon, of Sheffield, for appellant.

There was no contract of employment between plaintiff and defendant, and plaintiff cannot recover for alleged services. Dancy v. Baker, 206 Ala. 236, 89 So. 590; Stevens v. Bailey, 149 Ala. 256, 42 So. 740; Moses v. Beverly, 137 Ala. 473, 34 So. 825; Handley v. Shaffer, 177 Ala. 636, 59 So. 286. The burden of proof was upon plaintiff to make out his case, to show a contract of employment. The evidence on the issue being equally balanced, plaintiff failed to discharge the burden resting upon him, and cannot recover. Land Mortg. etc., Co. v. Preston, 119 Ala. 290, 24 So. 707; Wheeler v. McGuire, 86 Ala. 398, 5 So. 190, 2 L. R. A. 808. A broker acting in negotiations as the agent of the vendor cannot act for the purchaser in the same transactions. Moore's Case, 1 Ala. App. 556, 55 So. 542; Green v. So. States L. Co., 141 Ala. 680, 37 So. 670; Norman v. Reuther, 25 Misc. Rep. 161, 54 N. Y. S. 152; Chatfield v. Simonson, 92 N. Y. 209; 7 Mayfield's Dig. 741. The complaint is so indefinite and uncertain as to the existence of a contract between plaintiff and defendant, or of any duty owing by defendant to plaintiff or breach of duty by defendant, that the demurrers interposed should have been sustained. Munter v. Rogers, 50 Ala. 283; Highland Ave. v. Dusenberry, 94 Ala. 413, 10 So. 274; Andrews v. Flack, 88 Ala. 294, 6 So. 907; B. R. L. & P. Co. v. Nicholas, 181 Ala. 491, 61 So. 361. When a count contains inconsistent and contradictory averments, it is subject to demurrer. Merrill v. Sheffield Co., 169 Ala. 242, 53 So. 219. The telegrams offered were communications between attorney and client, confidential and personal. Shanghnessy v. Fogg, 15 La. Ann. 330; Rooney v. Maryland O. Co., 184 Mass. 26, 67 N. E. 882; B. R. & E. Co. v. Wildman, 119 Ala. 547, 24 So. 548; W. O. W. v. Ward, 196 Ala. 327, 71 So. 404. There was a variance between allegations and proof as to the wording of telegrams, and a variance in any material matter is fatal to recovery. Moses v. Beverly, 137 Ala. 473, 34 So. 825; Handley v. Shaffer, supra. Plaintiff's designation of the owners in telegrams as "my clients" is an admission which throws the weight of testimony against him. 16 Cyc. 1043; 17 Cyc. 754; Whittick v. Keiffer, 31 Ala. 199; Bureau v. Griffin, 19 Ala. App. 657, 100 So. 77.

A. H. Carmichael, of Tuscumbia, and Mitchell & Hughston, of Florence, for appellee.

Telegrams passing between defendant and the attorney, who acted also as agent, were admissible. L. & N. R. Co. v. Hill, 115 Ala. 334, 22 So. 163; M. & M. R. Co. v. Yeates, 67 Ala. 164; Cotton v. State, 87 Ala. 75, 6 So. 396; Rowland v. Plummer, 50 Ala. 182; 10 Ency. Evid. 221, 236, 237, 239, 246, 326. Counsel discuss the other questions raised and treated, but without citing additional authorities.

BOULDIN, J. The suit is for breach of contract for the payment of commissions to a real estate broker for the purchase of a tract of land for the defendant. The complaint sets forth quite fully the transaction

made the basis of the action. It will be made a part of the statement of the case by the reporter.

[1] The averments of the complaint sufficiently show a contract of employment between plaintiff and defendant on a commission basis; that commissions were to be figured on whatever purchase price was agreed upon; that the price named was to include the commissions, which were to be paid to the vendors and by them paid over to plaintiff, and that the "vendors consented to and agreed on such arrangement and payment." The expressions, "it was understood" and "further understood," in their context clearly import an agreement, a meeting of the minds, on the matters alleged.

[2] Further averments disclose negotiations through plaintiff resulting in agreement between vendors and the purchaser as to price and terms, a full compliance with the conditions of such agreement by the vendors, and a refusal of defendant, without good cause, to close the transaction and make payment.

[3] The complaint does not present the case of a vendor employing an agent to consummate a sale and to pay commissions out of the purchase money when paid. Here the purchaser is the payor for services rendered under contract with him, the vendor being made a trustee to receive the commissions and pass them on to plaintiff.

The telegram from plaintiff to defendant of January 29, 1926, set out in the complaint, indicates an interest on the part of plaintiff in requesting the defendant to name a given price and terms, but it does not purport to be an offer by the vendors through plaintiff as their agent. The telegram in response and bearing same date says: "Make offer, etc.," a direction to plaintiff to act for and on defendant's behalf in making the offer suggested by plaintiff. The telegram from plaintiff to defendant of January 30th, advises of acceptance of defendant's offer made through plaintiff.

The demurrer challenging the complaint for failure to show a contract of employment and performance thereof, on the part of plaintiff, and upon the further ground that the complaint is repugnant because the written transaction set forth contradicts the other allegations of the complaint were not well taken.

[4, 5] An attorney employed by a prospective purchaser to examine and pass upon title, to cause a survey made to ascertain acreage not subject to overflow, have map made, to work out other details of the transaction for an absent client, and finally to prepare or approve deeds and other documents to close the transaction, becomes an agent as well as attorney for his client. The relation calls for contact and negotiations with fellow agents and the vendor. In such case the employment and authority of the attorney, instructions given him, and his communications to his client in course of executing his duties and his final report, all constituting a part of the res gestæ of the transaction, are not privileged communications in a suit involving such transactions. 40 Cyc. p. 2374; 10 Ency. of Evidence, pp. 23B, 237D; L. & N. R. R. Co. v. Hill, 115 Ala. 334, 22 So. 163.

[6] Under these rules the telegrams passing between the defendant at Miami and his attorney, Mr. Andrews, at Sheffield, were properly admitted in evidence. The initial telegram of January 31st, directed Mr. Andrews to pass upon the property as well as titles and accept same if satisfactory.

The concluding telegram of February 21st, directed Mr. Andrews to notify the vendors the deal was off. All this correspondence looks to working out details in course of the agency committed to the attorney, and to communications with plaintiff as disclosed by telegrams to him.

[7] The telegram of January 29th, plaintiff to defendant, was not rendered inadmissible because of variance in that the words "best buy" were copied into the complaint as "biggest buy."

The purpose of that clause was to boost the property as a good buy. This purpose is apparent from either form of expression, and the slight variance between pleading and proof was immaterial.

[8] The question to defendant as a witness, made the basis of the 22d assignment of error, was properly disallowed. That a survey was made as requested and approved was already shown by the written telegrams in evidence.

[9] So, also, the question made the basis of assignment of error No. 23 was disallowed without error. The matter there inquired about could only arise after the defendant went to Florida, from which time all communications were shown to be in writing and in evidence. The question really called for evidence in contradiction of the telegram of January 31st to Mr. Andrews. The later telegrams fully showed plaintiff's insistence upon delivery of documents to plaintiff for examination.

[10] The evidence tends to show that after all details had been agreed upon, titles approved, papers drawn, and deed signed, acknowledged and approved by counsel, defendant refused to close the deal, assigning as a reason an objection by the vendors to sending all the papers to defendant by mail. In view of the suggestion of his attorney that the deed be sent with draft attached, the wording of defendant's telegram calling off the deal, and the evidence of witnesses, including defendant himself, we think the conclusion was fully warranted that defendant was demanding the deed, as well as other

documents, be sent to him by mail for inspection. At least, the vendors were justified in so understanding his request.

[11-13] This was, of course, an unbusinesslike demand. Objection thereto furnished no legal ground to call off the deal. On the same day defendant declared the deal off; he was notified by wire that all papers would be sent to him by messenger for inspection. Refusal of this offer was not justified. The evidence that the messenger was sent and the interview between him and defendant was properly admitted.

[14] The chief issue of fact in the case was the existence of a contract of employment as averred in the complaint. The evidence in this regard was in direct conflict. Its solution was for the jury.

[15] It is insisted there was error in refusing a new trial because the verdict was contrary to the weight of the evidence.

The silence of the telegrams touching commissions is not of moment, if, as plaintiff insists, the contract of employment was made and its terms agreed upon before defendant went to Florida. The telegrams were passed in carrying forward negotiations already begun.

In the initial telegram from defendant to plaintiff of January 29th, plaintiff is commissioned to purchase adjoining property in connection with this, and notice given that Joe Hermans would be entitled to half commissions on that deal. This is corroborative of plaintiff's version of the agreement as to commissions on this property.

Earnest insistence is made that the evidence does not show the vendors were informed that commissions were included in the price of $300 per acre finally agreed upon and consented thereto. If the other evidence in this regard is not clear, it is sufficiently clarified by the telegram of Mr. Andrews to defendant, February 9th, advising him that Mr. Mitchell, one of the vendors asked a cash payment to enable him to pay agents' commissions.

[16] That plaintiff referred to the vendors as "my clients" in the later stages of the transaction, was a circumstance to be considered by the jury along with the whole evidence.

[17] Services may be rendered for both parties in bringing them together on a deal of this sort, the commissions to be paid in a manner known and agreed to by all parties.

Under the presumption indulged in such cases, we cannot say the court erred in refusing to disturb the verdict of the jury.

[18] Refused charge 6, if not misleading, was fully covered by other instructions. The writings disclosed the contract so far as conditions were to be met by the vendors, and without dispute they were complied with, save in the matter of sending the papers to defendant by mail. What we have written will suffice to show charges 7, 9 and 10 were refused without error.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.