206 So.2d 868

In re Lea HARRIS

v.

STATE of Alabama.

3 Div. 339.

Supreme Court of Alabama.

Jan. 18, 1968.

Robert E. Coburn, Jr. and Lea Harris, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., for the State.

LAWSON, Justice.

This is a most confusing record.

We construe the record to show that Honorable Lea Harris, a practicing attorney of the Montgomery County Bar, was called before the Grand Jury of Montgomery County on November 13, 1967, and was asked the following question: "Who contacted you to represent Gary Cooper?"

Mr. Harris refused to answer on the ground that the question called for a privileged communication between attorney and client.

On his refusal to answer, Mr. Harris was immediately presented in open court before the presiding judge, who had impaneled the grand jury, and the judge then and there ordered Mr. Harris to answer the question in that it did not call for an answer which constituted a privileged communication. Mr. Harris did not agree with the trial court and stated that he would not answer the question in that he still entertained the view that the question could only be answered by revealing a privileged communication between attorney and client.

The trial court then and there and in open court adjudged Mr. Harris guilty of contempt of court and sentenced him to imprisonment in the county jail until he should purge himself of the contempt by complying with the Court's order to answer the question. Mr. Harris did not perfect an appeal from the contempt judgment although, being an attorney, he could have done so under the provisions of Act No. 859, approved September 2, 1965, Acts of Alabama 1965, Vol. 2, p. 1602 (See 1965 Cumulative Pocket Part to the 1958 Recompiled Code of Alabama, where said act is designated as § 9(½), Title 13).

Although there was no appeal taken from the contempt judgment, the record before us contains a court reporter's transcription of all that occurred in open court in the presence of the trial judge on the occasion when Mr. Harris was adjudged to be in contempt of court.

Immediately following the contempt proceedings and on November 13, 1967, a petition for writ of habeas corpus was filed in the Circuit Court of Montgomery County on behalf of Mr. Harris. The writ was

duly issued wherein the Sheriff of Montgomery County was "commanded to have the body of Lea Harris alleged to be detained by you, by whatsoever name the said Lea Harris is called or charged, with the cause of such detention, before me, Richard P. Emmett, on the 14th day of November, 1967, at the Court House at Montgomery, Alabama, at 4:30 p. m. o'clock to do and receive what shall then and there be considered concerning the said Lea Harris."

Although the writ commanded the Sheriff to bring Mr. Harris before Judge Emmett at 4:30 p. m. on November 14, 1967, the record shows that a habeas corpus proceeding was held before Judge Emmett at 4:30 p. m. on November 13, 1967. The record further shows that at the conclusion of that hearing Judge Emmett on November 13, 1967, rendered a judgment wherein he adjudged that Mr. Harris "is not entitled to his discharge on habeas corpus, and that the writ be discharged and that the said Lea Harris be remanded to the custody of M. S. Butler, as Sheriff of the County of Montgomery, State of Alabama, there to remain until discharged by due process of law."

As far as we can determine, no appeal was taken from the judgment rendered on November 13, 1967, in the habeas corpus proceeding. Yet the record on which this cause was submitted contains a court reporter's transcription of all that occurred at the habeas corpus hearing on November 13, 1967.

On the next day, November 14, 1967, another petition for writ of habeas corpus was filed on behalf of Mr. Harris. A writ of habeas corpus was forthwith issued and served on Sheriff Butler on November 14, 1967, commanding the Sheriff to bring Mr. Harris before Judge Emmett at five o'clock on the afternoon of November 14, 1967.

Apparently there was a habeas corpus hearing before Judge Emmett on November 14, 1967, because the record contains the following judgment entry:

"IN RE: LEA HARRIS

"This matter now coming on to be heard before the undersigned Judge upon the petition of Lea Harris, for a writ of habeas corpus, and upon the return of M. S. Butler, as Sheriff of Montgomery County, Alabama, and the said Lea Harris being present in his own proper person and by counsel, and the State not being represented, the undersigned Judge proceeds to hear the matter; and after hearing the same the undersigned Judge being of the opinion that the said Lea Harris is not unlawfully or illegally restrained of his liberty, it is

"ORDERED, ADJUDGED AND DECREED that the said Lea Harris is not entitled to his discharge on habeas corpus, and that the writ be discharged and that the said Lea Harris be remanded to the custody of M. S. Butler, as Sheriff of the County of Montgomery, State of Alabama, there to remain until discharged by due process of law.

"Witness my hand on this the 14th day of November, 1967.

/s/ Richard P. Emmett
CIRCUIT JUDGE

"Filed in office this 14th day of November, 1967.

John R. Matthews, Clerk"

It is the judgment rendered on November 14, 1967, from which Mr. Harris has appealed, but there is absolutely nothing in the record before us which tends to show what transpired at the habeas corpus hearing which immediately preceded the rendition of the judgment from which this appeal was taken.

The record contains a so-called Bill of Exceptions. Why it is in this record we do not know unless appellant or his counsel entertained the view that an appeal had been taken from the judgment of contempt under the provisions of Act No. 859, supra, which does provide for a bill of exceptions

where an appeal is taken as provided in that Act. But such was not the case. The "Bill of Exceptions" contains no evidence. It is simply a recitation of all the proceedings which transpired prior to the taking of the appeal.

We think the foregoing description of the record points up our dilemma. As shown above, the appeal was taken from the habeas corpus judgment rendered on November 14, 1967; yet the record contains absolutely nothing which shows what occurred on that hearing. For aught appearing, no evidence was offered by the State or by Mr. Harris.

■ If Mr. Harris simply advised the Court that he would not comply with the Court's order to appear before the grand jury and answer the question, "Who contacted you to represent Gary Cooper?", then we entertain the view that the Court correctly held that Mr. Harris was not entitled to his discharge on habeas corpus, for the general rule is that the rule making communications between attorney and client privileged from disclosure does not ordinarily apply where the inquiry is confined to the fact of the attorney's employment, the name of the person employing him, and the terms of the employment. 58 Am.Jur., Witnesses, § 507; Mobile & Montgomery Railway Co. v. Yeates, 67 Ala. 164; White v. State, 86 Ala. 69, 5 So. 674.

But an exception is said to exist to the general rule. 58 Am.Jur., Witnesses, § 507. We took note of that exception and held that the facts in Ex parte Enzor, 270 Ala. 254, 117 So.2d 361, brought that case within the exception. Consequently, we reversed the action of the trial court holding Mr. Enzor to be in contempt of court for refusing to comply with the trial court's order to return to the grand jury room and answer a question which he had refused to answer when he was before the grand jury because his answer would violate the rule of privilege which exists as a result of the attorney-client relationship.

■ But there is no evidence in the record before us which could bring this case within the exception. It does not appear from this record that Mr. Harris even claimed that the person who first contacted him to represent Gary Cooper was, in fact, his client.

■ We have said that, "Whether a communication by a client to his attorney is privileged is a question of fact to be determined by the court. A witness, be he attorney or client, is not entitled to decide the question for himself. * * *" Ex parte Griffith, 278 Ala. 344, 350, 178 So.2d 169, **176.** It is the general rule that the burden of showing the confidential character of a communication rests on the party objecting to the introduction of the evidence. Upon him rests the burden of showing the relationship of attorney and client and other facts which would tend to show his claim of privileged communication. See 58 Am. Jur., Witnesses, § 520, pp. 291 and 292.

■ Mr. Harris as far as this record discloses failed to meet that burden.

We have no alternative but to affirm the judgment from which this appeal was taken.

Affirmed.

GOODWYN, MERRILL and HARWOOD, JJ., concur.

COLEMAN, J., dissents.