This petition for writ of mandamus, filed in this Court by René Clark, seeks to compel Judge Ferrill McRae of the Circuit Court of Mobile County, Alabama, to vacate his order requiring Mrs. Clark's attorney, Jay M. Ross, to produce Mrs. Clark's financial records related to Ross's client trust fund account to the district attorney, to quash a subpoena, and to order that the subpoena not be reissued.
The facts show that Mrs. Clark is a suspect in the murder of her husband, Cameron Clark. After his death, Mrs. Clark received an insurance check in the amount of $101,101.37. She gave the check to attorney Ross who deposited it into his attorney trust fund. *Page 494 
On or about October 11, 1993, Ross received a subpoena duces tecum from the Mobile County District Attorney's Office ordering Ross to "[f]urnish any and all records regarding the disbursement of funds from the account of Reid, Freedman, Perloff, and Ross to the benefit of René Clark for the period March 11, 1988, to the present date. Documents should include but not be limited to: attorney fees, check or cash disbursements."
Ross filed a motion to quash the subpoena on October 11, 1993. On October 14, 1993, Judge McRae held a hearing on the motion to quash. At the hearing on the motion to quash, the district attorney stated that he was seeking, through the subpoena duces tecum, to learn how the insurance proceeds had been disbursed: "[A]ll we ask for are the canceled checks and the records of how that $101,000.00 was disbursed. What we want to know is how those monies were disbursed, period." R. 8.
On October 18, 1993, the judge denied the motion and ordered Ross to produce the information sought by the subpoena. Ross filed a motion to reconsider, which was also denied by Judge McRae.
On October 26, 1993, the district attorney filed a motion for contempt alleging that attorney Ross had failed to comply with the order of the court. On that same date, Ross filed a petition for writ of mandamus in the Supreme Court of Alabama. On October 29, 1993, the Supreme Court transferred the mandamus petition to this Court. Upon receipt of the petition, this Court ordered that all further proceedings in this matter in the circuit court be stayed.
The petitioner argues that disclosure of the requested information would violate the attorney-client privilege, Mrs. Clark's right of privacy, and the Fifth and Sixth Amendments to the United States Constitution. The petitioner argues, "At no time did the District Attorney make any argument, whether by way of Affidavit, sworn or unsworn pleading or informal showing, that the information sought was either vital to or necessary for an investigation; nor did the District Attorney make any showing whatsoever of probable cause or need of for the information sought." Petition at 2.
As a preface to deciding the issue presented in this case, we make the following general observations.
In Alabama, the attorney-client privilege is codified in Ala. Code 1975, § 12-21-161, which states:
 "No attorney or his clerk shall be competent or compelled to testify in any court in this state for or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner."
In Richards v. Lennox Industries, Inc., 574 So.2d 736, 739-40
(Ala. 1991), the Alabama Supreme Court noted:
 "By enacting § 12-21-161, Alabama recognized the common law attorney-client privilege:
 'It is agreed that [§ 12-21-161] is but a declaration of the law on privileged communication between attorney and client previously administered by the courts ["to which it contributes nothing." Guiterman, Rosenfield Co. v. Culbreth, 219 Ala. 382, 122 So. 619
(1929)].'
 "Ex parte Enzor, 270 Ala. 254, 256, 117 So.2d 361
(1960).
 "The basic elements of the attorney-client privilege, as statutorily defined at § 12-21-161, are set out in C. Gamble, McElroy's Alabama Evidence § 388.01 (3d ed. 1977), as follows:
 " '(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.' *Page 495 
 "See 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).
 ". . . The term 'communication' imports not only words uttered, but information conveyed by other means. 'Acts as well as words fall within that privilege.' Cooper v. Mann, 273 Ala. 620, 143 So.2d 637 (1962).
 "In Ex parte Great American Surplus Lines Insurance Co., 540 So.2d 1357, 1359 (Ala. 1987), we examined the purpose of the attorney-client privilege:
 " 'The purpose of the privilege is to encourage candid "communication between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice."
 " 'The advantage of the privilege ordinarily inured to the attorney and protected both his honor and the oath of his office. By the late eighteenth century, however, the emphasis shifted to the protection of the client. The privilege is now viewed as the exclusive prerogative of the client.'
(Citations omitted.)
 "The burden of establishing the privilege rests with the client or with the party objecting to the disclosure of the communication. See Harris v. State, 281 Ala. 622, 206 So.2d 868 (1968); see, also, Swain v. Terry, 454 So.2d 948 (Ala. 1984). The client also has the burden of showing that the admission of the privileged information into evidence will be prejudicial to him. Swain v. Terry, supra. Whether a communication is privileged is 'a matter solely within the province of the court to determine.' See, Ex parte Griffith, 278 Ala. 344, 178 So.2d 169 (1965), cert. denied, 382 U.S. 988, 86 S.Ct. 548, 15 L.Ed.2d 475 (1966). Because not every communication made by a client to an attorney is privileged, the trial court must first look at the circumstances of the case in connection with the fact disclosed and determine whether the communication was made 'professionally' (i.e., whether it was made professionally is a question of fact for the trial court). Brazier v. Fortune, 10 Ala. 516 (1846). However, once that determination has been made, the trial court then determines whether, as a matter of law, the attorney-client privilege may be invoked. See 1 Thornton on Attorneys at Law § 96 (1914)."
In Ex parte Griffith, 278 Ala. 344, 350-51, 178 So.2d 169,176-77 (1965), cert. denied, 382 U.S. 988, 86 S.Ct. 548,15 L.Ed.2d 475 (1966), the following observations were made:
 "Whether a communication by a client to his attorney is privileged is a question of fact to be determined by the court. A witness, be he attorney or client, is not entitled to decide the question for himself. Thornton on Attorneys at Law, Vol. 1, Section 96, and authorities therein cited.
 "There are limitations on the application of the rule of privileged communications. As pointed out in Sawyer v. Stanley, 241 Ala. 39, 1 So.2d 21, the perpetration of a fraud is outside the scope of professional duty of an attorney, and that the great majority of cases hold that the privilege 'protecting communications between attorney and client is lost if the relation is abused, as where the client seeks advice that will serve him in the commission of a fraud.' The reason for this exception to the general rule is that if a client discloses his fraudulent purposes, and the attorney refuses to be connected with it, there cannot be said to be professional employment, and consequently no privilege accrues; if the client does not disclose his fraudulent purpose, there is no confidential relationship established, and no attaching privilege; if an attorney knowing the facts and fraudulent purpose agrees to aid in the perpetration of the fraud, he then becomes a party to it, and the communications made to him cease to be privileged. Thornton, supra, Sec. 122; 58 Am.Jur., Witnesses, Sec. 517.
 "Where false allegations are made in pleadings in order to invoke the jurisdiction of a court, and false testimony is presented to support the untrue allegations, monumental fraud is thereby perpetrated upon the court. The relation of attorney and client cannot be used as a cloak to cover wrongdoing. The rule of privilege is defensive, not offensive. If the communication between attorney and *Page 496 
client relates to unlawful or fraudulent accomplishment, higher public policy, and the duty of an attorney to society as a whole abrogates the privilege.
 "Further, communications made by a client to an attorney which the attorney in the discharge of his duty is of necessity obliged to make public are not privileged. See White v. State, 86 Ala. 69, 5 So. 674. This rule is applicable to facts communicated by a client which are to be alleged in pleading. Thornton, supra, Sec. 118; 58 Am.Jur. Witnesses, Sec. 491.
 "In addition to the above doctrines it was specifically held in White v. State, supra, that an attorney may, without violating the rule of confidential communications, be compelled to testify to the fact of his employment; that he was the authorized attorney of a client in a certain transaction; as to any matter manifestly not intended to be private or confidential, but was intended to be communicated to the adverse party; to prove the handwriting of his client, the payment of monies to him; the execution of papers which the attorney attested.
 "It is therefore manifest that the petitioner in refusing to take the stand and testify assumed for himself the right to determine whether his assertion of the doctrine of confidential communication was valid. This was a matter solely within the province of the court to determine. The petitioner's actions in the premises were premature, and can furnish no justification for his refusal to testify."
See also Harris v. State, 281 Ala. 622, 625, 206 So.2d 868, 871
(1968) ("the general rule is that the rule making communications between attorney and client privileged from disclosure does not ordinarily apply where the inquiry is confined to the fact of the attorney's employment, the name of the person employing him, and the terms of the employment").
 "An attorney may be compelled to testify to his possession of and to produce his client's documents, which are not communications from his client, entrusted to him by the client to the same extent that the client himself would be compellable to testify to his possession of, or to produce, such documents. It should be noted that the attorney-client relationship does not entitle either the client or the attorney to refuse to produce a document to the judge for inspection by him to determine whether it is privileged from disclosure under the attorney-client privilege."
C. Gamble, McElroy's Alabama Evidence § 391.02 (4th ed. 1991) (footnote omitted), citing Guiterman, Rosenfield Co. v.Culbreth, 219 Ala. 382, 122 So. 619 (1929); Sovereign Camp,W.O.W. v. Reed, 208 Ala. 457, 94 So. 910 (1922).
 "When an attorney is engaged by a client to act as his agent in some business transaction, which largely can be regarded as a non-lawyering function, then the attorney-client privilege does not protect from disclosure communications made in the course of carrying out the transaction."
McElroy at § 391.04 (footnote omitted), citing Nyhoff v.Palmer, 217 Ala. 432, 116 So. 520 (1928); Chapman v. Peebles,84 Ala. 283, 4 So. 273 (1888).
 I
We find that Judge McRae did not abuse his discretion in ordering Ross to produce the information sought by the subpoena.
 "Before the attorney-client privilege attaches, there must be a communication between the attorney and the client that is confidential, Sawyer v. Stanley, 241 Ala. 39, 1 So.2d 21 (1941), and it must have been communicated because of the attorney-client relationship. § 12-21-161, Code 1975."
Goza v. Goza, 470 So.2d 1262, 1266 (Ala.Civ.App. 1985) (emphasis added).
The party asserting the existence of the attorney-client privilege has the burden of proving facts to establish that claim. Swain v. Terry, 454 So.2d 948, 953 (Ala. 1984);Application of Doe, 603 F. Supp. 1164, 1166 (E.D.N.Y. 1985) (on motion to quash subpoena served on attorney for clients being investigated by IRS, movant had burden to establish privilege).
Here, the petitioner has shown neither a "confidential communication" nor a communication *Page 497 
made to a lawyer in his capacity as such.
"[W]here the attorney acts in any other capacity than as an attorney, such as a depository, or trustee, the attorney-client relationship does not obtain. . . ." Silverman v. Turner,188 So.2d 354, 355 (Fla.Dist.Ct.App. 1966).
 " 'While an attorney may not disclose a communication made by a client to him or his advice given thereon, such prohibition . . . does not extend to money or property received by or in the custody or control of the attorney, for he merely becomes the agent of his client with respect thereto.' "
Id. (quoting In re Feinberg's Estate, 185 Misc. 862,57 N.Y.S.2d 747, 749 (1945) (emphasis added in Silverman). See also Circle Floor Co. v. Siltan Corp., 36 Misc.2d 634,233 N.Y.S.2d 158, 160 (1962). Compare Randy International, Ltd. v.Automatic Compactor Corp., 97 Misc.2d 977, 412 N.Y.S.2d 995,998 (N.Y. Civ. Ct. 1979) (attorneys holding money in escrow for clients are not "acting as attorneys at all. The are merely acting as escrow agents. Attorneys holding money for clients may be required to disclose that fact since they are acting as agents for the client in a capacity which is not within the scope of professional employment. Simply stated, the disclosure of whether or not money is being held in escrow does not involve the giving of evidence of a 'confidential' communication made 'in the course of professional employment' ") (citations omitted); Art Board, Inc. v. Worldwide BusinessExchange Corp., 134 Misc.2d 350, 510 N.Y.S.2d 973, 974 (N Y Civ. Ct. 1986). See generally 8 Wigmore, Evidence § 2292 et seq.
Bank records of receipts and disbursements in lawyers' trust accounts are not privileged communications. Securities Exchange Commission v. First Security Bank, 447 F.2d 166, 167
(10th Cir. 1971), cert. denied, 404 U.S. 1038, 92 S.Ct. 710,30 L.Ed.2d 729 (1972); O'Donnell v. Sullivan, 364 F.2d 43, 44 (1st Cir.), cert. denied, 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433
(1966); Harris v. United States, 413 F.2d 316, 319-20 (9th Cir. 1969); Goldberg v. Ross, 421 So.2d 669 (Fla. Dist. Ct. App. 1982).
 "The [attorney-client] privilege extends 'to the substance of matters communicated to an attorney in professional confidence.' The deposit and disbursement of money in a commercial checking account are not confidential communications. The records are the property of the bank and are made by it for its business purposes. The functions and responsibilities of bank employees are not analogous to those of an attorney's secretaries and clerks. The relationship between each bank and the [attorney] depositor is that of a debtor-creditor.
 ". . . The maintenance of checking accounts is not shown to have any relevance to any communications made in confidence between a lawyer and client for the purpose of obtaining legal advice. A client may not immunize his business transactions from discovery by the device of a lawyer's commercial checking account."
Securities Exchange Commission v. First Security Bank, 447 F.2d at 167 (citation omitted).
In Ashcraft v. Harvey, 315 So.2d 530 (Fla. Dist. Ct. App. 1975), the trial court disallowed discovery of certain "bank statements, canceled checks, and check records" in an attorney's trust account, the same items sought in the case before us. The Florida appellate court reversed, holding that the attorney-client privilege was not a basis upon which the attorney could refuse to produce records of transactions in his trust account. Citing 8 Wigmore, Evidence, § 2307, the Florida appellate court observed that "a client's documents must be delivered up from an attorney if the client himself would be compelled to give up possession." Ashcraft v. Harvey, 315 So.2d at 531.
The Wigmore treatise poses the following questions:
 "Is the attorney compellable to produce in court, by subpoena or bill of discovery, the documents placed in his possession by the client?
 "This is not a question of compelling the disclosure of the attorney's knowledge; he may know nothing of the contents of the documents, nor is he asked to testify about them. Whether the package contains a *Page 498 
diamond or a deed is immaterial. But must he produce it?
 "The answer here depends upon the other privileges of the client irrespective of the present [attorney-client] privilege. The attorney is but the agent of the client to hold the deed. If the client is compellable to give up possession, then the attorney is; if the client is not, then the attorney is not. It is merely a question of possession, and the attorney is in this respect like any other agent. There is, to be sure, the added consideration of policy — namely, that if the attorney were not compellable when the client was, then the client's obligation to produce could always be evaded in very simple fashion by placing the deed with the attorney. Such a quibble could not be tolerated by any practical system of law. But, apart from this, the doctrine of agency is ample to justify the result.
 "The extent of the client's obligation to produce
must therefore be taken as determining this preliminary question, and that obligation has undergone radical change in the history of our law. In the first place, at common law, the client who was a party opponent in the suit was not obliged to produce, either at or before the trial, except so far as the rule of profert and oyer extended; but in equity he was obliged to produce any document (except that before trial he could not be obliged to discover the documents affecting his own case alone); and under modern statutes the equitable rule has been made available by motion or subpoena to produce in common law proceedings. . . . In the next place, the client who was a third person was at common law bound to produce upon subpoena except when the document was a deed supporting some title of his own. . . . In the third place, the client was and is in any instance not bound to produce a self-incriminating document. . . .
 "It follows, then, that when the client himself would be privileged from production of the document, either as a party at common law or as a third person claiming title or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce. Such has invariably been the ruling. On the other hand, if the client would be compellable to produce, either by motion or by subpoena or by bill of discovery, then the attorney is equally compellable, if the document is in his custody, to produce under the appropriate procedure."
8 Wigmore, Evidence § 2307 at 591-93 (emphasis in original) (footnote omitted).
 II
In the present case, neither Mrs. Clark's Fourth Amendment right against unreasonable searches and seizures nor herFifth Amendment right against self-incrimination prevents production of the information sought by the subpoena.
A bank depositor's Fourth Amendment rights are not violated when his bank records are obtained by means of subpoena duces tecum. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619,48 L.Ed.2d 71 (1976). See generally John H. Derrick, Annotation,Rights and Remedies of Financial Institution Customer inRelation to Subpoena Duces Tecum Exception to GeneralProhibitions of State Right to Financial Privacy Statute, 43 A.L.R.4th 1157 (1986). Therefore, if Mrs. Clark had not placed funds into her attorney's trust account, but had instead, deposited the funds into an account to which she was the named depositor on the bank records sought by the subpoena, she would have no standing to object, on Fourth Amendment grounds, to the bank's compliance with the subpoena. "[T]he issuance of a subpoena to a [bank] to obtain the records of [the bank] does not violate the rights of a [depositor], even if a criminal prosecution is contemplated at the time the subpoena is issued." United States v. Miller, 425 U.S. at 444,96 S.Ct. at 1624, 48 L.Ed.2d at 80.
Neither does the Fifth Amendment shield Mrs. Clark's financial transactions from disclosure pursuant to subpoena. Because the financial records were not in Mrs. Clark's possession, but in the possession of the bank, Mrs. Clark had no standing to raise the Fifth Amendment privilege. "[T]heFifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him." *Page 499 Couch v. United States, 409 U.S. 322, 328, 93 S.Ct. 611, 616,34 L.Ed.2d 548, 554 (1973) (emphasis in original).
In Couch, the Court ruled that the Fifth Amendment right of a taxpayer was not violated by the enforcement of an investigative summons directed to the taxpayer's accountant for production of the taxpayer's records in the possession of the accountant. The Court's holding was based on the fact that "the ingredient of personal compulsion [was] lacking" when the summons was directed to the accountant. Couch, 409 U.S. at 329,93 S.Ct. at 616, 34 L.Ed.2d at 554.
The facts of Fisher v. United States, 425 U.S. 391, 408,96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976), are similar to those inCouch, except that IRS investigative summonses were issued to the taxpayers' attorneys rather than to the taxpayers' accountants. The Court's holding was the same as in Couch:
 "The taxpayer's privilege under [the Fifth] Amendment is not violated by enforcement of the summonses involved in these cases because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything — and certainly would not compel him to be a 'witness' against himself. . . .
 ". . . The taxpayers' Fifth Amendment privilege is . . . not violated by enforcement of the summonses directed toward their attorneys. This is true whether or not the Amendment would have barred a subpoena directing the taxpayer to produce the documents while they were in his hands."
Fisher, 425 U.S. at 397, 96 S.Ct. at 1574, 48 L.Ed.2d at 47-48. The Court also observed that:
 "The fact that the attorneys are agents of the taxpayers does not change this result. Couch held as much, since the accountant there was also the taxpayer's agent, and in this respect reflected a long-standing view. In Hale v. Henkel, 201 U.S. 43, 69-70, [26 S.Ct. 370, 377, 50 L.Ed. 652, 663] (1906), the Court said that the privilege 'was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person. . . . [T]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against himself.'
(Emphasis in original.) 'It is extortion of information from the accused himself that offends our sense of justice.' Couch v. United States, [409 U.S.,] at 328[, 93 S.Ct., at 616, 34 L.Ed.2d, at 554]. Agent or no, the lawyer is not the taxpayer. The taxpayer is the 'accused,' and nothing is being extorted from him."
Fisher, 425 U.S. at 397-98, 96 S.Ct. at 1574, 48 L.Ed.2d at 48.
Because Mrs. Clark could claim no privilege, under either the Fourth or the Fifth Amendment, that would allow her to prevent the bank's production of the subpoenaed materials, her attorney can claim no privilege. The circuit court's order refusing to quash the subpoena was, therefore, correct and the petition for writ of mandamus is due to be denied.
 III
The district attorney's authority to issue the subpoena in this case derives from Ala. Code 1975, § 12-17-184(18), which provides that:
 "It is the duty of every district attorney and assistant district attorney, within the circuit, county or other territory for which he is elected or appointed:
". . . .
 "(18) To, at any time the grand jury is not in session, issue subpoenas to persons to come before them, and they shall have power to administer oaths to said persons and examine them as to any violation of the criminal laws of the state."
See also Rule 17.1(c)(2), A.R.Crim.P., which provides that:
 "At any time the grand jury is not in session, the district attorney shall issue subpoenas for any witnesses the district attorney may require to come before the district attorney for examination under oath administered by the district attorney as to any violations of the laws of the State of Alabama; if the matter being investigated is not before the grand jury, the district attorney shall have authority to issue such *Page 500 
subpoenas when the grand jury is in session."
The petitioners argue that the district attorney had no authority to issue the subpoena in this case because, contrary to the provisions of the statute and the rule, the grand jurywas in session when the subpoena was issued. However, this argument for quashing the subpoena was not presented to the circuit court and the issue therefore has not been preserved for our review.
The petition for the writ is denied.
PETITION DENIED.
All Judges concur. *Page 1008