This is an appeal by the defendant, Louisville and Nashville Railroad Company, from the grant of a new trial in an action brought against it by one of its employees under the Federal Employers' Liability Act (FELA). We remand with directions.
The facts surrounding the injury are straightforward and require little amplification. Plaintiff was a head brakeman working on a switching crew and, while standing on a switch tie, made a misstep, lost his footing, and fell into an adjacent drainage ditch. The gist of his negligence claim against the railroad was that it had failed to provide him with a safe place to work by failing to place sufficient ballast in the area of the switch ties, thus making the operation of the switch unsafe without level ground for walking. The defendant's evidence, inter alia, was that plaintiff himself had worked at this site "at least 50 times" for three months prior to the accident, and that other employees had operated the switch on numerous occasions without mishap also.
Following trial, the case went to the jury under the doctrine of comparative negligence. The jury returned a verdict of $75,000.00 for plaintiff and judgment was entered accordingly.
Thereafter the plaintiff moved for a new trial on the ground that the trial court, acting in accord with the decision of the United States Court of Appeals for the Fifth Circuit in Johnsonv. Penrod Drilling Co., 510 F.2d 234 (5th Cir. 1975), had erred in not permitting plaintiff's expert witness to testify to plaintiff's loss based upon future inflationary trends. The motion stated that a decision rendered after this trial, to wit, Culver v. Slater Boat Co., 688 F.2d 280 (5th Cir. 1982), had overruled that portion of Penrod holding that future inflationary trends were inadmissible. In his motion plaintiff also contended that the verdict was grossly inadequate. The trial court granted the plaintiff's motion for a new trial, and the defendant appealed.
It should be noted that plaintiff's motion did not contend that any error was committed by the trial court under the law as it existed at the time of this trial, which was concluded on September 16, 1982. Judgment on the verdict was entered on September 17, 1982. Culver was issued on September 22, 1982, and, we are advised by defendant, is presently on rehearing. In that connection, we note that the United States Supreme Court, on June 15, 1983, decided Jones Laughlin Steel Corp. v.Pheifer, ___ U.S. ___, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). The opinion in that *Page 1277 
case discusses several alternative approaches to the problem of considering future inflation, without decreeing that any one of those options should apply in all cases.
Defendant raises two issues on appeal to support its position that the trial court erred in granting a new trial to the plaintiff. These are:
(1) That the plaintiff did not object to the trial court's instruction that the jury "not take into account any speculation concerning future inflation, deflation, or changes in the purchasing power of the dollar"; and
(2) That the trial court could not properly grant a new trial on the ground of inadequacy of damages.
 I
Rule 51, A.R.Civ.P., provides:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. . . ."
The record reveals that no objection was made by the plaintiff to the trial court's instructions to the jury pertaining to future inflation. The record does disclose that the trial court did confer in chambers with counsel for both sides prior to the testimony of one Dr. Fred Johnson, who later testified for the plaintiff on the issue of damages. That discussion was not recorded; nevertheless, it appears from affidavits of counsel that the trial court gave as its view of the applicable law that Dr. Johnson's testimony should be governed by the Penrod
decision. Neither side was prevented from making a record of its position on that issue in open court; however, plaintiff never made an objection to the trial court's instruction until after Culver was released.
In that posture, plaintiff contends that the trial court acted properly in correcting its erroneous instruction which followed Penrod by granting a new trial. Plaintiff maintains that the purpose of Rule 51 has been satisfied when the trial court has granted a new trial or, in the alternative, that a misleading jury instruction may be made the basis for a new trial without the necessity of an objection. As the basis for this proposition plaintiff cites us to American Service MutualIns. Co. v. Grizzard, 356 So.2d 191 (Ala.Civ.App. 1978), and toAlabama Power Co. v. Robinson, 404 So.2d 22 (Ala. 1981), andHerrington v. Central Soya Co., Inc., 420 So.2d 1 (Ala. 1982), as having followed Grizzard.
In Grizzard, the trial court responded to an inquiry from the jury by giving them an instruction that was incorrect at that time. Later the trial court granted a new trial. In commenting on this action, the Court of Civil Appeals stated:
 "Rule 51, ARCP, contemplates a situation in which an appellant's appeal is based on the trial court's erroneous, misleading or improper oral charge. In that case, an objection is required in order to allege such oral charge as error. However, a misleading charge to the jury may be a basis for a new trial without the necessity of objecting to the charge. See Montgomery City Lines, Inc. v. Scott, [248 Ala. 27, 26 So.2d 200 (1946)]; Proctor v. Coffey, [227 Ala. 318, 149 So. 838 (1933)]; Rule 51, ARCP." 356 So.2d at 193-94.
It bears repetition at this point that the trial court's instruction on the application of future inflation was neither incorrect nor misleading when it was given to the jury. Accordingly, it is unnecessary here to consider whether the authorities cited as support for the analysis of Rule 51 by the Court of Civil Appeals are correct. Because the instruction as given was the correct law at the time it was given, the giving of it could not be successfully assigned as error on appeal. Rule 51, A.R.Civ.P. Those instructions "became the law of the case by which the jury was bound, and even had the instruction been erroneous, . . . the matter could not be made a predicate for error by first taking notice thereof on a motion for a *Page 1278 
new trial." Loch Ridge Construction Co., Inc. v. Barra,291 Ala. 312, 320, 280 So.2d 745, 751 (1973). Indeed, the Court of Civil Appeals has stated:
 "[T]o allow the grounds in support of the objections to be assigned in the motion for new trial would destroy the very purpose of the rule. . . . We do not believe Rule 51 authorizes nor was intended to authorize a practice whereby grounds offered in support of objections . . . may be assigned as late as a motion for new trial. . . ." Hogan v. Alabama Power Co., 351 So.2d 1378, 1385 (Ala.Civ.App. 1977), cert. den., 351 So.2d 1388 (Ala. 1977).
Plaintiff argues, moreover, that we should not apply Rule 51 in this case, but should apply certain exceptions recognized in federal cases. He asserts that the failure to object may be disregarded "if the party's position has previously been clearly made to the Trial Court and it is clear that further objection would be unavailing." However much the plaintiff's citations of authority for this principle apply in the specific instances he cites, that principle can have no application here. Atkins asserts only that his position on evidence of future inflation was presented during an in-chambers conference. We have alluded to this unrecorded conference. There is no record of counsel's objection to the trial court's views on the applicability of future inflation evidence underPenrod, even though the trial court expressly recognized the right of counsel to record their positions in open court. Plaintiff here did not even submit proposed instructions on future inflation. What the record shows is that when the court announced that it would not permit Dr. Johnson, the expert, to testify as to future inflation, plaintiff's counsel, rather than objecting, stated: "Then Judge I won't go into future inflation, and I think I can get his testimony in another way." Cf. Stewart v. Ford Motor Co., 553 F.2d 130 (D.C. Cir. 1977), with Monomoy Fisheries, Inc. v. Bruno Stillman Yacht Co.,Inc., 625 F.2d 1034 (1st Cir. 1980) (exception applied in former case after trial court's refusal of requested instructions, but not followed in latter case). Indeed, plaintiff's position during trial conformed to Penrod. For example, after defendant objected to the testimony of plaintiff's own economics expert, an in camera conference was held on the defendant's motion to exclude the testimony of that expert on the ground that it violated the rule of Penrod.
During that conference, the trial court commented: "He [the expert] says he does not take future inflation into consideration in doing this thing." Plaintiff's counsel responded: "That's exactly it." In other words, it is apparent that plaintiff took the position that his expert's testimony did not predict future inflation. Under those circumstances it cannot be established that plaintiff informed the court of acontra position favoring the introduction of future inflation.
Plaintiff contends, additionally, that the trial court has committed "plain error" by instructing against an award based upon future inflation in conformity to Penrod. Under this view plaintiff apparently does not argue that the trial court's instruction was error when given. Rather, plaintiff argues that the trial court plainly erred when it failed to anticipate that the Penrod rule would later be changed. See Lang v. Texas Pacific R. Co., 624 F.2d 1275 (5th Cir. 1980), in which the appeals court held that it was not error for the trial court to refuse to give a requested charge on the effect of income tax on an award of damages, the decision to refuse the charge being based upon law at the time, even though after trial and during appeal the United States Supreme Court changed the law on the subject. We conclude that no "plain error" was present here, nor any other "error" in the trial court's instruction to the jury on the effect of future inflation.
Nor can we agree with plaintiff that Culver authorizes retroactive application in this case by way of a new trial. TheCulver court expressly applied its holding to "cases (i) now being tried, (ii) tried hereafter and (iii) those heretofore tried and now on, or subject to appeal in which the issue hasbeen properly and adequately raised.". *Page 1279 
(Emphasis added.) As we have shown above, the issue of future inflation was not properly raised in the court below, and thus the retroactivity aspect of Culver has no application here.
Moreover, this Court's decision in Trimble v. BramcoProducts, Inc., 351 So.2d 1357 (Ala. 1977), perforce applies under these circumstances. In that case, a plaintiff had made a claim in strict liability against Ford Motor Company but not against another defendant, Mitchell Motors. Acting under the law as it then existed, the trial court dismissed the claim. Following the trial, this Court adopted the Alabama Extended Manufacturers' Liability Doctrine. Plaintiff then moved for a new trial, whereupon the trial court granted a new trial against both Ford Motor Company and Mitchell Motors. On appeal this Court affirmed the grant of the new trial against Ford, but reversed the trial court's decision as to Mitchell Motors with this explanation at 1362:
 "At no point in the pleadings, the pretrial order or elsewhere in the record has the plaintiff attempted to assert a claim for relief against Mitchell Motors based upon a theory of strict liability in tort or the Alabama Extended Manufacturer's Liability Doctrine which, of course, was not stated until after this case was tried. Atkins v. American Motors Corp., [335 So.2d 134 (Ala. 1976)]; Casrell v. Altec Industries, Inc., [335 So.2d 128 (Ala. 1976)]. Although Jett v. Honda
[339 So.2d 66 (Ala. 1976)] reversed the trial court in granting defendants' motion to dismiss and remanded the cause for reconsideration in light of Casrell and Atkins, supra, Jett v. Honda (like Casrell and Atkins) had not been tried at the time appellate review was sought. Additionally and significantly, the complaint which was dismissed sought relief on the basis of `strict liability in tort.' This case has been tried to a jury. Every theory of liability advanced by the plaintiff against Mitchell has been tried. A jury has rendered a verdict in Mitchell's favor and judgment has been entered thereon. Although the Casrell and Atkins decisions do have some retroactive effect, such retroactivity cannot extend to controversies between parties which have been adjudicated. The principle of res judicata is predicated upon the doctrine that litigation must come to an end. Any issue which has been adjudicated, or which could have been adjudicated, is by that doctrine barred from further litigation. Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946). That principle, so fundamental to our jurisprudence, would be violated if the law as it evolves to meet new conditions of society, were made retroactive to re-open, for another trial, matters laid to rest under theories of liability existing at the time they were tried. See Restatement Judgments, § 65 (1)." (Emphasis added.)
Accordingly, the trial court could not have granted a new trial on the basis of a change in the law of the Penrod case.
 II
The defendant argues that the trial court could not properly grant a new trial on the ground of inadequacy of damages. On this issue the plaintiff in brief states that his "claim for lost future wages represents the largest aspect of his entire claim for compensation" and is "the single most important element for the plaintiff's damages." While that position may be true, it is important to note as well that FELA cases are tried under the doctrine of comparative negligence, and, as the trial court charged the jury, "damages shall be diminished . . . in proportion to the amount of negligence attributable to such employee."
The defendant contended at trial that plaintiff's negligence contributed to his injuries, and it must be noted that plaintiff sought recovery for injuries as well as for lost future wages. His fall occurred in broad daylight at a place where he had been on some fifty other occasions, and at a switch he had thrown five other times that day. Plaintiff testified that he made a misstep while stepping backward, and fell backwards and landed on his head in the *Page 1280 
ditch. From the bottom of the ditch to the top of the switch tie from which he fell is 28 inches. He had previously taken a safety rules examination on rules which stated in part: "A large proportion of injuries are the result of falling, slipping, tripping, et cetera. These injuries occur at all times and under all circumstances." Defendant's evidence showed that others had previously operated this switch often, without mishap.
The day after his fall, plaintiff began a course of treatment which ultimately resulted in operations which fused the fourth and fifth spinal discs. Medical evidence of plaintiff's diagnoses and treatment was extensive. Plaintiff's first operation occurred on November 1, 1979, and the second was performed on June 18, 1980. Although he was discharged from the hospital on the sixth day following his second surgery, plaintiff continued to complain of pain and was referred to a psychiatrist. His neurosurgeon estimated plaintiff's "permanent partial disability as 20 percent relative to disability of the body function as a whole but related to his strain of the cervical spine." Nevertheless, on January 5, 1982, plaintiff was authorized by his physician to return to work as a brakeman. He did return to work on March 1, 1982, and worked regularly when work was available.
Plaintiff made no claim for medical or any other expenses. The evidence disclosed that plaintiff did not work for the interval of time between the date of his injury, June 22, 1979, and his release to return to work, or approximately thirty and one-half months. During that interval the three employees above and below plaintiff on the seniority roster earned an average of $54,340.77 in gross earnings, subject to federal and state income taxes.
In this case the plaintiff's motion for a new trial contained numerous grounds relating to the Penrod and Culver cases. However, the motion for a new trial also contained the following ground: "10. For that the verdict of the jury was grossly inadequate." This ground is the equivalent of "contrary to the evidence of damages." In this ruling granting a new trial, the trial court did not specify any ground; the order reads only that "Plaintiff's motion for a new trial is granted." Nevertheless, the issues and arguments of counsel predominantly, though not exclusively, center upon the Penrod
and Culver decisions. Therefore, this Court considers it necessary to remand this cause to the trial court to enable that court to advise this Court as to whether or not it granted the plaintiff's motion for a new trial on the basis of theCulver decision. It is so ordered.
REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.