This is an appeal from a judgment entered on a jury verdict which determined that a parol contract for the sale of certain realty situated in Talladega County, Alabama, complied with the Code 1975, § 8-9-2 (5), exception to the Statute of Frauds.
On May 11, 1979, Cuviere Terry filed suit in circuit court against Willie J. Swain, Thomas Beavers, and certain fictitious parties. The complaint alleged that as of 1979, Swain was of sound mind, but that Swain had previously been an incompetent under the guardianship of attorney Ralph D. Gaines, Jr.[1] Terry alleged that in 1978 Swain was the owner of certain property adjacent to Terry's business and home in Talladega County, Alabama, which Terry wanted to purchase for the construction of a new home. According to Terry, he contacted Swain's guardian concerning this purchase, and Gaines told Terry that he would execute a quit claim deed to Terry for $2,000.00 with the circuit court's approval. Based upon this alleged representation, Terry began construction of a house on this property in August 1978. Terry alleged that Swain ratified this agreement on numerous occasions both before and after the construction began and both before and after Swain's disabilities were removed.
According to Terry, in January 1979, Swain and Beavers, his son-in-law, erected a fence around this property and committed acts of waste on the property, thereby preventing completion of Terry's improvements. Terry sought the following relief: 1) an order ejecting Swain and Beavers from the property and restraining them from committing acts of waste or interference with completion of his improvements on the property; 2) an order determining the legal owner and fair market value of the property; and 3) an order requiring Swain, if found to be the legal owner, to perform the contract entered into by his guardian during his incompetency or, alternatively, an order declaring that the legal owner of the property was unjustly enriched in a sum exceeding $75,000.00, the current value of Terry's improvements.
In addition to this complaint, Terry filed a lis pendens notice wherein he asserted title to this property. The circuit court granted Terry temporary relief and enjoined the defendants from interfering with completion of Terry's improvements on the property.
Swain filed an answer and counterclaim wherein he denied the existence or ratification of any such agreement to purchase this property and pleaded the Statute of Frauds as an affirmative defense to the enforcement of such an oral contract. Swain then counterclaimed for $250,000.00 in damages, stating that he was the owner in fee of such property and that Terry had been continuously trespassing thereon.
Terry amended his complaint by adding three additional counts. In Count Two, Terry alleged that on or about July 22, 1978, he and Swain entered into an oral agreement whereby Terry would take possession of this realty, deliver to Swain earnest money in the amount of $200.00, and pay the remainder of the purchase price upon delivery of a deed. Terry alleged that in reliance upon this agreement he paid the earnest money, took possession of the property, and spent $70,000.00 in making improvements thereon. Terry alleged that in September 1978, Swain breached this parol contract by refusing to execute a deed to Terry, despite Terry's repeated attempts to tender the outstanding purchase price. Terry sought an injunction compelling Swain to convey the property to him.
The third count of Terry's amended complaint alleged that Swain willfully, recklessly, or innocently misrepresented to Terry that either he or his guardian would convey the property to Terry in exchange for *Page 951 
$2,200.00 if Terry made a $200.00 down payment. In reliance upon these misrepresentations, Terry alleged, he was damaged in excess of $70,200.00.
In the final count of Terry's amended complaint, he alleged that although the parol contract between himself and Swain might be unenforceable, Swain was unjustly enriched by the improvements which Terry made on the property. Terry sought injunctive relief against further acts of waste on the property, specific performance of the parol agreement, and $90,000.00 compensatory and $100,000.00 punitive damages.
Swain answered the amended complaint and demanded a jury trial. Terry then amended his complaint again, adding Gloria Jean Swain and the Estate of Willie J. Swain as defendants, and including a fifth cause of action. In this count, Terry averred that Gloria Swain was the daughter of Willie J. Swain and that the Estate of Willie J. Swain was a guardianship pending in Talladega Circuit Court in which there was no final settlement as to the realty which Swain acquired during his guardianship and which Terry claimed under the parol contract. According to Terry, Swain and his guardian, Gaines, misrepresented to Terry that they would convey this property to Terry in accordance with the July 22, 1978, parol agreement. Moreover, Swain allegedly conveyed an undivided one-half interest in the property to Gloria on August 28, 1978. Terry sought an equitable estoppel against the defendants to preclude their benefiting from his improvements, and an equitable lien upon the property for the value of his improvements.
At a hearing, both sides agreed to an injunction prohibiting them from going on the property pending a final hearing. On May 30, 1980, the circuit court granted Terry's motion for temporary restraining order and preliminary injunction to allow him to remain in possession of the property and to complete construction of the residence on this property.
On March 13, 1981, Terry filed an answer to Swain's counterclaim and obtained default judgments against the Estate of Willie J. Swain and Gloria Jean Swain. Various appeals were taken, and both sides' motions for summary judgment were denied.
In the jury trial which followed, Ray Robbins, the attorney in Gaines's law firm who initiated the circuit court proceeding to convey the subject property, testified that Swain visited the law firm on several occasions to discuss this conveyance. In particular, Robbins testified that Swain and Terry had entered into an agreement to sell the realty, that Terry had paid Swain $200.00 as earnest money, and that Swain became angry when he realized that he could not obtain the remaining purchase price without court action. This testimony was allowed over the strenuous objections of Swain, who asserted the attorney-client privilege.
At the close of all the evidence, Swain unsuccessfully moved for a directed verdict. Upon deliberation, the jury found that Swain was, during the month of July 1978, mentally competent to contract for the sale of his property; that Swain received $200.00 from Terry as a down payment on the property; and that Swain put Terry in possession of the property.
The circuit court then entered judgment in favor of Terry, vesting complete title to the property in him, based upon the existence of an agreement between Terry and Swain to purchase this property, Terry's payment of a portion of the purchase price, Swain's act of placing Terry in possession of the property, and Terry's payment of the remaining purchase price into court. In accordance with this judgment, the court register was ordered to pay Swain the $2,000.00, less costs, which Terry deposited with him in satisfaction of the outstanding purchase price.
The issues presented for review are 1) whether Swain's post-judgment motion properly preserved alleged errors for appellate review; and, if so, 2) whether the circuit court erred in denying Swain's motion for directed verdict which challenged the sufficiency of Terry's evidence as to *Page 952 
whether the alleged agreement between the parties complied with the Code 1975, § 8-9-2 (5), exception to the Statute of Frauds; 3) whether the circuit court erred in denying Swain's motion for directed verdict which challenged the sufficiency of the evidence as to Swain's mental competence to contract during the relevant period; and 4) whether the circuit court erred in allowing the testimony of attorney Ray Robbins at trial despite Swain's assertion of the attorney-client privilege.
Within 30 days after the entry of final judgment, Swain filed a motion denominated "Motion for New Trial or in the Alternative, for Reconsideration." In this motion, Swain requested that the circuit court set aside the judgment rendered against him because, among other reasons, the court erred in denying his motion for directed verdict and because Terry failed to produce sufficient evidence of an oral contract for the conveyance of realty between himself and either Swain or Swain's guardian which was outside the Statute of Frauds.
According to Terry, this motion contains numerous drafting errors which preclude our review of the substantive issues which swain raises on appeal.
At the outset, Terry contends that Swain cannot raise on appeal any issue as to the sufficiency of the evidence, due to his failure to file a motion to set aside the jury's verdict prior to the final judgment entry and his failure to file a post-judgment motion denominated "Motion for Judgment Notwithstanding the Verdict." We disagree.
To test the sufficiency of the evidence on appeal, a party must have moved for a directed verdict at trial and must, not later than 30 days after entry of judgment, move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with its previous directed verdict motion. Rule 50 (b), A.R.Civ.P.; Perdue v. Gates,403 So.2d 165 (Ala. 1981).
The argument based on Swain's failure to denominate his post-judgment motion a "Motion for Judgment Notwithstanding the Verdict" is without merit. Although it is desirable to label pleadings and motions correctly, there is no penalty for mislabeling, where the body of the pleading or motion complies with the applicable procedural requirements. See Committee Comments, Rule 7, A.R.Civ.P.; Rule 8 (c), A.R.Civ.P.; andGuaranty Funding Corp. v. Bolling, 288 Ala. 319, 260 So.2d 589
(1972). Swain's post-judgment motion, which sought to set aside the judgment rendered against him and to have judgment entered in accordance with his motion for directed verdict, clearly satisfied the Rule 50 (b), A.R.Civ.P., definition of a motion for judgment notwithstanding the verdict, despite its formal appellation.
As his second line of defense, Terry argues that even if Swain's post-judgment motion can properly be characterized as a motion for judgment notwithstanding the verdict, Swain's failure to include within this motion the specific grounds of incompetency and the admission of evidence violative of the attorney-client privilege precludes our review of these issues.
Rule 7 (b)(1), A.R.Civ.P., requires that all motions "shall state with particularity the grounds therefor. . . ." Rule 50 (a), A.R.Civ.P., requires that all motions for a directed verdict, which are incorporated by reference within a motion for judgment notwithstanding the verdict, "shall state the specific grounds therefor." Because Swain failed to include within either his motion for directed verdict or his post-judgment motion the specific ground of incompetency,[2] we cannot review this issue for the first time on appeal. We must therefore limit our review of the directed verdict issues to the sufficiency of the evidence as to a parol contract for the conveyance of realty outside the Statute of Frauds, as *Page 953 
this issue was included as a specific ground within Swain's post-judgment motion.
Formal exceptions to evidentiary rulings are, however, unnecessary; it is sufficient that a party object to the ruling and state its grounds therefor at the time the ruling is made. Rule 46, A.R.Civ.P. Because Swain complied with these requirements, he clearly preserved for review the question of the admission of evidence violative of the attorney-client privilege.
The first issue presented for review is whether there was sufficient evidence of a parol contract for the conveyance of realty outside the Statute of Frauds.
Section 8-9-2 (5), Code 1975, an exception to the Statute of Frauds, provides that a contract for the sale of lands, tenements, or hereditaments, or any interest therein, which ordinarily would have to be in writing and signed by the party to be charged therewith, need not be in writing if "the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
Swain argues that his motion for directed verdict should have been granted because Terry failed to offer any evidence that either Swain or his guardian placed Terry in possession of the realty in question. We disagree.
Terry clearly presented evidence at trial satisfying both the partial payment and the possession requirements of the Code 1975, § 8-9-2 (5), exception to the Statute of Frauds.
Terry testified that in July 1978, he went to Swain's house and offered Swain $2,000.00 for the purchase of certain property owned by Swain which was contiguous with Terry's business. According to Terry, he paid Swain $200.00 as part of the purchase price and received a receipt from Swain, who instructed Terry to see his guardian about the necessary paperwork. Terry then met with Gaines, who informed him that the conveyance would be by quitclaim deed, and whose associate Robbins initiated the circuit court proceedings necessary to convey the property from Swain to Terry. According to Terry, Gaines told him that he could begin construction of his residence on the property at once, without awaiting the final decree. Terry then commenced the construction of his residence on the property.
Although this testimony was disputed by other evidence presented at trial, such a conflict in the testimony was clearly a question for the jury. Therefore, Swain's directed verdict motion was properly overruled.
The final issue presented for review is whether the trial court erred in allowing the testimony of attorney Ray Robbins at trial despite Swain's assertion of the attorney-client privilege.
In Alabama, the attorney-client privilege is statutorily defined as follows:
 "No attorney or his clerk shall be competent or compelled to testify in any court in this state for or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner."
Code 1975, § 12-21-161.
The burden of showing the confidential character of a communication rests on the party objecting to the introduction of the evidence. This party must establish the relationship of attorney and client as well as other facts demonstrating the claim of privileged information. See Harris v. State, 281 Ala. 622, 206 So.2d 868 (1968). The client must also show that the admission of this privileged information into evidence will be prejudicial to the client. See Rowland Co. v. Plummer,50 Ala. 182 (1874). Because, however, invocation of this privilege is solely the client's prerogative, the privilege may be waived, either *Page 954 
directly or constructively, by the client. See Rowland Co.,supra.
It is undisputed that attorney Ralph D. Gaines, Jr., was appointed guardian ad litem to represent and defend Swain in accordance with Code 1975, § 26-2-42 (b). However, despite Gaines's reluctance to testify at trial as to privileged information gained during the attorney-client relationship between himself and Swain, Swain failed to invoke the attorney-client privilege at any time during Gaines's testimony.
The relationship between attorney Ray Robbins and Swain is, however, unclear. Terry argues that because the pleadings signify that Robbins represented only Gaines in his capacity as the guardian ad litem of Swain, Robbins was never the "attorney of record" for Swain, and Swain was therefore not justified in invoking the attorney-client privilege with regard to Robbins's testimony.
The proper characterization of Robbins as either the attorney for Gaines or for Swain is unimportant in light of Swain's failure to object to the testimony of his guardian concerning confidential information gained during the attorney-client relationship.
Swain's election not to invoke the privilege with regard to his guardian's testimony effectively opened the door to similar testimony from other members of Gaines's law firm. We therefore hold that Swain's actual waiver of the attorney-client privilege regarding the testimony of his guardian, Ralph Gaines, constituted a constructive waiver of any privilege which Swain might invoke concerning the testimony of Robbins, who was at that time a member of Gaines's law firm. The trial court was therefore correct in overruling any objections to Robbins's testimony based upon Swain's assertion of the attorney-client privilege.
The judgment of the circuit court is affirmed.
AFFIRMED
TORBERT, C.J., and MADDOX, FAULKNER and EMBRY, JJ., concur.
[1] The letters of guardianship over the estate of Willie J. Swain, which were issued to Ralph D. Gaines, Jr., on October 30, 1951, were formally revoked on November 13, 1978. On November 21, 1978, Swain was adjudicated to be of sound mind.
[2] Swain not only failed to include the specific ground of incompetency in his post-judgment motion, but also failed to include this ground in his answer as a "matter constituting an avoidance or affirmative defense." Rule 8 (c), A.R.Civ.P.