Larry Brice Richards and Denise Richards filed a products liability action under the Alabama Extended Manufacturer's Liability Doctrine against Lennox Industries, Inc. ("Lennox").[1] Mr. Richards sought money damages for injuries he sustained in an explosion that he contends was caused by a defective valve assembly in the gas furnace in the Richards home. Mrs. Richards sought money damages for loss of consortium resulting from her husband's injuries.
The Richardses contended that Lennox had negligently designed, manufactured, inspected, and sold a gas furnace that they allege exploded and injured Mr. Richards. Lennox pleaded, among other things, contributory negligence, efficient intervening cause, and misuse of the product. In addition, Lennox not only denied that the gas furnace exploded but also denied that the gas furnace was the cause of any explosion whatsoever.
At trial, the Richardses called as one of their witnesses Jesse Wade, who testified that he had removed the subject valve assembly from the gas furnace in the Richards home with the help of Leon Garmon, the Richardses' attorney, but that he could not remember "whether [the valve assembly] was broken or not." During the presentation of its defense, Lennox called as its witness Kenneth Paul Robertson, Jr. (former law clerk to Garmon), who testified that he had observed a test conducted on the valve assembly prior to its removal, that he had removed the valve assembly from the gas furnace at the Richards home with no assistance from anyone, that to his knowledge there were no "parts broken off of [the valve assembly]" at the time he removed it, and that he had returned the valve assembly to Garmon's office. Robertson *Page 738 
was employed by Garmon at the time he says he made these observations and performed these acts.
The Richardses objected[2] to Robertson's testimony on behalf of Lennox, contending that under Ala. Code 1975, §12-21-161, Robertson was not competent to testify against them. Section 12-21-161 reads as follows:
 "No attorney or his clerk shall be competent or compelled to testify in any court in this state or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner."
Specifically, the Richardses objected to Robertson's testimony because they contended that Robertson's knowledge of the allegedly defective valve assembly was a "matter or thing, knowledge of which may have been acquired from the client," and was thereby protected under the attorney-client privilege.
The trial court, having heard the proffered testimony in camera, overruled the Richardses' objections and permitted Robertson to testify. Thereafter, the jury returned a verdict in favor of Lennox and against the Richardses. The Richardses then filed a motion for judgment notwithstanding the verdict,[3] or in the alternative, a new trial, contending that Robertson's testimony was clearly contrary to and in violation of § 12-21-161 and the common law attorney-client privilege and was highly prejudicial to the substantial rights of the Richardses. The trial court denied the Richardses' motion for new trial, stating, in pertinent part, as follows:
 "The only issue before the Court in [the Richardses'] Motion for Judgment Notwithstanding the Verdict, or, in the Alternative, for a New Trial, is whether [Garmon's] former law clerk was competent to testify in this trial. The Court allowed the former law clerk's testimony during trial, with many misgivings, as is evidenced by comments at that time; however, upon reflection, the Court deems the evidence admissible in this cause.
 "The basic purpose of [§ 12-21-161] is to prevent the disclosure of communications (i.e. legal advice and its related conversation) between a lawyer and his client. [Section 12-21-161] is not so absolute, however, [as] to prevent an attorney or law clerk from giving testimony that impeaches his former employer or from giving testimony detrimental to him, when not otherwise confidential.
 "[The Richardses'] argument focuses on the . . . wording [of § 12-21-161] preventing testimony concerning 'any matter or thing, knowledge of which may have been acquired from the client.' [The Richardses] state that since Kenneth Paul Robertson, Jr., the former law clerk, learned about the furnace involved in this case and obtained access to the furnace in [the Richardses'] house through his employment with [the Richardses'] counsel, that this information is confidential and privileged. This Court disagrees with [the Richardses] here, for the furnace was the subject matter of the lawsuit, and the chain of custody was a relevant issue. Certainly the location of the furnace, the safe design of which was the issue in the trial, was not privileged information, but information required by all parties in the suit and obtainable through discovery. While the former clerk learned of the testimony from [the Richardses], this testimony is *Page 739 
knowledge that 'may have been acquired in any other manner.' § 12-21-161, Ala. Code (1975). In addition, Ken Robertson, the former law clerk, merely testified that he removed the valve system from the furnace and observed a test. He neither testified about communications he had with [the Richardses] nor about legal advice he gave [the Richardses]. These facts must be read together with the applicable case law which holds that 'a statement of some act done by him, was in no wise violative of the statutory proscription related to the incompetency of a lawyer to testify against his client.' Ole South Building Supply Corp. v. Pilgrim, 425 So.2d 1086 at 1093 (Ala. 1983)."
The Richardses appeal.
The issue for our review is whether the trial court erred in holding that Robertson was competent to testify as a witness on behalf of Lennox. In essence, we must determine whether the trial court erred in holding that Robertson's testimony concerning his "acts" was not protected under the attorney-client privilege pursuant to § 12-21-161.
By enacting § 12-21-161, Alabama recognized the common law attorney-client privilege:
 "It is agreed that [§ 12-21-161] is but a declaration of the law on privileged communication between attorney and client previously administered by the courts ['to which it contributes nothing.' Guiterman, Rosenfield Co. v. Culbreth, 219 Ala. 382, 122 So. 619
(1929)]."
Ex parte Enzor, 270 Ala. 254, 256, 117 So.2d 361
(1960).
The basic elements of the attorney-client privilege, as statutorily defined at § 12-21-161, are set out in C. Gamble, McElroy's Alabama Evidence § 388.01 (3d ed. 1977), as follows:
 "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived."
See 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).
Communications to an attorney's law clerk, in the belief that he is acting in a legal capacity, have the same privileged status as communications to the attorney himself. Hawes v.State, 88 Ala. 37, 7 So. 302 (1890). The term "communication" imports not only words uttered, but information conveyed by other means. "Acts as well as words fall within that privilege." Cooper v. Mann, 273 Ala. 620,143 So.2d 637 (1962).
In Ex parte Great American Surplus Lines InsuranceCo., 540 So.2d 1357, 1359 (Ala. 1987), we examined the purpose of the attorney-client privilege:
 "The purpose of the privilege is to encourage candid 'communication between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice.'
 "The advantage of the privilege ordinarily inured to the attorney and protected both his honor and the oath of his office. By the late eighteenth century, however, the emphasis shifted to the protection of the client. The privilege is now viewed as the exclusive prerogative of the client."
(Citations omitted.)
The burden of establishing the privilege rests with the client or with the party objecting to the disclosure of the communication. See Harris v. State, 281 Ala. 622,206 So.2d 868 (1968); see, also, Swain v. Terry,454 So.2d 948 (Ala. 1984). The client also has the burden of showing that the admission of the privileged information into evidence will be prejudicial to him. Swain v. Terry, supra. Whether a communication is privileged is "a matter solely within the province of the court to determine." See, Ex parteGriffith, 278 Ala. 344, 178 So.2d 169 (1965), cert. denied, 382 U.S. 988, 86 S.Ct. 548, 15 L.Ed.2d 475 (1966). Because not every communication made by a client to an attorney is privileged, *Page 740 
the trial court must first look at the circumstances of the case in connection with the fact disclosed and determine whether the communication was made "professionally" (i.e., whether it was made professionally is a question of fact for the trial court). Brazier v. Fortune, 10 Ala. 516
(1846). However, once that determination has been made, the trial court then determines whether, as a matter of law, the attorney-client privilege may be invoked. See 1 Thornton on Attorneys at Law § 96 (1914). Invocation of the privilege is solely the client's prerogative; therefore, the client may waive the privilege, either directly or constructively. SeeSwain v. Terry, supra.
In order to prevail on their products liability claim against Lennox under the Alabama Extended Manufacturer's Liability Doctrine, the Richardses had the burden of proving that the valve assembly was in the same or substantially the same condition at the time of the incident that it was in at the time the gas furnace was sold. They also had to prove that their expert's experiments were conducted under substantially the same conditions as existed at the time of the incident, in order for evidence of those experiments to be introduced into evidence. See Caterpillar Tractor Co. v. Ford,406 So.2d 854 (Ala. 1981). Therefore, the testimony concerning the removal of the valve assembly and its condition at the time of its removal constituted a critical component of the Richardses' case. Thus, the Richardses contend that Robertson's testimony clearly violated the attorney-client privilege, because knowledge of the matters about which he testified, including knowledge of the mere existence of the gas furnace as well as actual access to the gas furnace, was gained from the Richardses as a direct result of Robertson's employment as law clerk for Garmon. The Richardses contend that Robertson's testimony created an inference that the condition of the valve assembly had been altered or damaged subsequent to the explosion and subsequent to the removal of the valve assembly.
Lennox contends that the Richardses did not carry their burden of establishing that Robertson's testimony was privileged communication. Rather, Lennox contends that Robertson's testimony merely regarded "acts" that he had performed — the act of removing the valve assembly; the act of removing from the basement a piece of pipe that Lennox contends could have been a possible source of gas causing the explosion; and the act of observing a test conducted on the gas furnace (a test that had been conducted while the valve assembly was still in place in the Richards home and prior to the experiments conducted by the Richardses' expert).
We note the cases that Lennox cites for the proposition that Robertson's testimony as to certain acts in no way violates the attorney-client privilege, namely Ole South Building SupplyCorp. v. Pilgrim, 425 So.2d 1086 (Ala. 1983);Guiterman, Rosenfield Co. v. Culbreth, 219 Ala. 382,122 So. 619 (1929); Chapman v. Peebles, 84 Ala. 283,4 So. 273 (1888). However, after a thorough review of those cases, we find their facts to be distinguishable from those of the instant case. We also find the rationale of their holdings not to be applicable to the issue before us. Furthermore, our extensive research has revealed no case directly on point.
In the instant case, it is undisputed that Robertson was Garmon's law clerk at the time he performed the "acts" of which he testified. Thus, with respect to the facts before us, we find that Robertson's testimony regarding the "acts" he performed represented communications from the Richardses (as the clients) to Robertson (as law clerk for Garmon at the time in question). Therefore, after a careful analysis of §12-21-161, along with a careful analysis of DR 4-101, Rules of Disciplinary Enforcement (1974) (effective until January 1, 1991), and the new Canon 4, Alabama Rules of Professional Conduct (effective January 1, 1991), we hold that the "acts" as to which Robertson testified were privileged communications, knowledge of which was obtained from a confidential attorney-client relationship, and that the admission of evidence of those "communications" violated § 12-21-161. *Page 741 
In addition, after thoroughly reviewing the record, we consider it clear that Robertson's testimony concerning his removal of the valve assembly and his testimony concerning the condition of the valve assembly at the time of its removal were prejudicial to the Richardses' case, because that testimony could have conceivably given rise to an inference that the valve assembly had been altered or damaged between the time of the explosion at the Richards home and the time that the Richardses' expert tested the valve assembly. The inference that the damage or alteration occurred after the incident complained of, but before the testing conducted by the Richardses' expert, could have had the effect of invalidating those tests and could have rendered the Richardses' products liability claim against Lennox less credible.
We note the argument made by Lennox that if Robertson's testimony was determined to be privileged, then the Richardses had waived such privilege by allowing their witness to testify that he removed the valve assembly with the help of Garmon. Lennox cites no authority for that proposition. Furthermore, we find that argument to be totally without merit.
Based on the foregoing, we hold that the trial court erred in holding that Robertson's testimony was not privileged and in denying the Richardses' motion for a new trial. Therefore, we reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] The complaint also named as defendants Honeywell, Inc.; ITT General, Inc.; and Empiregas, Inc. The trial court entered summary judgment in favor of these defendants. The Richardses, however, did not appeal from these judgments; therefore, these defendants are not parties to this appeal.
[2] We note Lennox's argument that the Richardses failed to specifically object to the admission of Robertson's testimony. However, our review of the record reveals that the Richardses requested, and the trial court noted, a continuing objection to that testimony.
[3] Because the Richardses failed to file a motion for directed verdict, which is a prerequisite to a motion for judgment notwithstanding the verdict, the trial court's denial of that motion was proper.