813 So.2d 811 (2001)
John Jay OSBORN, M.D., and Seth I. Izenberg, M.D.
v.
Bobbie Jean ROCHE.
1000854.
Supreme Court of Alabama.
September 14, 2001.
*813 D. Scott Wright and Thomas H. Nolan, Jr., of Brown, Hudgens, P.C., Mobile, for appellants.
Submitted on appellants' brief only.
HARWOOD, Justice.
This appeal was filed pursuant to Rule 5(a), Ala. R.App. P., by John Jay Osborn, M.D., and Seth I. Izenberg, M.D. We granted them permission to appeal from the trial court's Rule 60(b), Ala. R. Civ. P., order setting aside summary judgments entered for them on claims brought by Bobbie Jean Roche under the Alabama Medical Liability Act ("AMLA"). We reverse and remand.
On November 6, 1995, Roche was brought to the emergency room at the University of South Alabama Medical Center. She had suffered severe injuries in an automobile accident. These included a closed-head injury, bilateral frontal lobe hemorrhages, frontal parietal soft tissue hematoma, fracture of the right humerus, a nondisplaced fracture of the left vertebral artery foramen of the second cervical vertebrae in the neck ("C2"),[1] and various other injuries. She was in a coma and was placed on a ventilator. Osborn, a fifth-year resident certified in general sugery, was the resident in charge of Roche's care. Izenberg, a board-certified specialist in both general surgery and critical care, was the supervising physician.
During Roche's emergency-room treatment, a radiological exam of her spine was attempted, but the odontoid process[2] they were trying to X-ray was obscured by the teeth. Dr. Osborn, Roche's primary emergency physician, stated in his deposition that in order to get improved odontoid views it would be necessary to tilt the head back, open the mouth, and insert the X-ray tube into Roche's mouth; he concluded that, in Roche's condition, suffering from a broken neck and a head injury, such a procedure would be unwise. On the basis of those facts, Osborn refused to order repeat odontoid X-rays, and they were never performed.
Roche remained as a patient at the University of South Alabama Hospital ("USAH") for nine days, during which time she was brought off the ventilator and recovered from her coma. On November 15, 1995, as a result of her improved condition, Roche was discharged. At the time of her discharge, her diagnosis was a closed-head injury, a fracture of the right humerus, and a compression fracture of C2, which was stable, all resulting from a motor-vehicle accident.
After her discharge, Roche continued to suffer severe pain in the cervical area. She was seen by Dr. Russell A. Hudgens, a member of the USAH department of orthopedic surgery. Dr. Russell ordered a cervical spine X-ray; that X-ray showed a displaced type II[3] odontoid fracture. As a result of the odontoid fracture, Roche was required to wear a halo apparatus[4] for approximately two months.
On November 5, 1997, Roche filed a complaint against Dr. Osborn, Dr. Izenberg, other USAH doctors who were involved *814 in her care,[5] and numerous fictitiously named parties, alleging negligence under AMLA. The complaint alleged that Roche's treating physicians had negligently failed to diagnose a fracture in her neck, and that as a result she had been required to wear a halo for two months and she had suffered a loss of rotation in her neck.
Dr. Osborn and Dr. Izenberg filed motions for a summary judgment on September 27, 1999, each claiming qualified immunity from civil liability as employees of USAH, a state operated hospital, and each motion asserting that the movant was entitled to a summary judgment because Roche had failed to offer expert testimony as to the standard of care. Although the record does not specify, we infer that Roche offered some form of opposition to the motions for summary judgment. At some point, also not specified in the record, the trial court placed the case on the administrative docket awaiting the outcome of the following cases that were then pending on appeal before this Court: Ex parte Cranman, 792 So.2d 392 (Ala.2000); Wells v. Storey, 792 So.2d 1034 (Ala.1999); Ex parte Rizk, 791 So.2d 911 (Ala.2000); and Wimpee v. Stella, 791 So.2d 915 (Ala. 2000). These cases all dealt with the extent to which doctors employed by the State were immune from civil liability.
On December 1, 1999, the attorney for Dr. Osborn and Dr. Izenberg wrote the trial judge and informed him of this Court's November 24, 1999, decisions in Cranman, Wells, Rizk, and Wimpee, supra, and offered those cases as additional support for the September 27, 1999, motions for summary judgment. The trial court held a hearing on December 17, 1999, at which time, finding both doctors immune from civil liability, it issued a summary judgment for Dr. Osborn on the basis of Rizk, supra, and a summary judgment for Dr. Izenberg on the basis of Cranman, supra. The trial court's rulings, having disposed of all claims against the only two remaining defendants, constituted a final judgment. See, Ala.Code 1975, § 12-22-2; Lunceford v. Monumental Life Ins. Co., 641 So.2d 244 (Ala.1994); Bean v. Craig, 557 So.2d 1249 (Ala.1990); and Taylor v. Taylor, 398 So.2d 267 (Ala. 1981).
Roche did not file a postjudgment motion within 30 days of the entry of the summary judgments, nor did she appeal. On June 16, 2000, on application for rehearing, this Court withdrew its opinion in Cranman and substituted another, with a different result. On June 30, 2000, also on application for rehearing, this Court withdrew its opinion in Rizk and substituted another, also with a different result. Those new opinions both denied absolute immunity for state-employed doctors. On November 30, 2000, Roche filed a "Motion to Reinstate" her case on the basis of the law in the substituted opinions in Cranman and Rizk. Although the motion to reinstate was not designated as a Rule 60(b), Ala. R. Civ. P., motion for relief from a judgment, the trial court appears to have treated it as such.
On December 14, 2000, Dr. Osborn and Dr. Izenberg filed a joint motion in opposition to Roche's motion to reinstate. On January 24, 2001, the trial court issued an order reinstating Roche's case to the trial docket. In pertinent part, the order stated:
"The Court is aware of the Alabama cases cited by the defendant in opposition to plaintiff's motion to reinstate which support the proposition that a final judgment should not be set aside, pursuant to a motion for extraordinary relief from judgment, based on a change *815 in the substantive law which provided the basis for [a] summary judgment in favor of the defendant where that change of law occurs in another or unrelated case and where the plaintiff did not timely appeal from the entry of final judgment. This Court expressly recognizes there are substantial grounds for disagreement on the legal issues presented by the plaintiffs motion to reinstate this case and the Court's ruling. This Court is of the opinion that the Supreme Court should address and resolve the effect of the Supreme Court's changes in the law of qualified immunity between the initial decision of the Supreme Court in Ex parte Cranman, issued on November 24, 1999, and the Court's subsequent opinion on rehearing in that case on June 16, 2000, on final judgments entered in favor of the defendants based on the law as it existed during that interim."
The trial court's order reinstating the case also contained a statement pursuant to Rule 5(a), Ala. R.App. P., to allow a permissive appeal to this Court so that we could consider the changed holdings in Rizk and Cranman with respect to their effect on qualified state-agent immunity and the bearing of those holdings on Roche's motion for reinstatement.
On February 7, 2001, Dr. Osborn and Dr. Izenberg petitioned this Court for a permissive appeal to review the interlocutory order of the trial court granting Roche's motion to reinstate. This Court permitted the appeal on March 7, 2001.
As noted, Roche's motion to reinstate was not designated as a Rule 60(b), Ala. R. Civ. P., motion, but that rule provides the only avenue by which she could obtain relief from the summary judgments for Dr. Osborn and Dr. Izenberg, and we infer from the trial court's treatment of the motion, and the phrasing of its subsequent reinstatement order, that it proceeded under Rule 60(b). Accordingly, we consider the substance of the order and review it under the standards applicable to the appellate review of Rule 60(b) orders. See, e.g., Adams v. Farlow, 516 So.2d 528 (Ala.1987); Swain v. Terry, 454 So.2d 948 (Ala.1984).
This Court has said the following regarding our review of a Rule 60(b) motion:
"A strong presumption of correctness attaches to the trial court's determination of a motion made pursuant to Rule 60(b), and the decision whether to grant or deny the motion is within the sound discretion of the trial judge, and the appellate standard of review is whether the trial court abused its discretion. Pierson v. Pierson, 347 So.2d 985 (Ala. 1977). In reviewing a ruling of a trial court on a Rule 60(b)(6) motion, the trial court's decision will not be disturbed unless it is determined `that there is an absence of reasonable cause, that rights of others subsequently arising would be adversely affected, or that it is unjust.' Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1979), quoting Nunn v. Stone, 356 So.2d 1212 (Ala.Civ.App.1978)."
Ex parte Dowling, 477 So.2d 400, 402 (Ala. 1985).
The sole basis for Roche's motion for reinstatement of her case is that, on June 16, 2000, and June 30, 2000, respectively, this Court changed the law of state-agent immunity in Ex parte Cranman and Ex parte Rizk. The trial court's order does not designate which Rule 60(b) ground was relied upon as a basis for the reinstatement.
Rule 60(b), Ala. R. Civ. P., states in pertinent part:
"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and *816 upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."
Roche's motion to reinstate was filed on November 30, 2000, 11 months after the entry of the final summary judgments on December 17, 1999. Because the last sentence of Rule 60(b) provides that a motion seeking relief under grounds (1), (2), and (3) must be filed within four months of the judgment, those grounds cannot support Roche's motion. Ex parte Wal-Mart Stores, Inc., 725 So.2d 279 (Ala. 1998), See also R.J. Reynolds Tobacco Co. v. Cantley, 717 So.2d 751 (Ala.1998), and Ex parte Alfa Mut. Gen. Ins. Co., 681 So.2d 1047 (Ala.1996).
Rule 60(b)(4) offers relief from a judgment only when "the judgment is void." Although Rule 60(b)(4) is not subject to the four-month limitation, a judgment is void only under very specific circumstances:
"The standard of review on appeal from the denial of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process."
Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala. 1991), citing Satterfield v. Winston Indus., Inc., 553 So.2d 61 (Ala.1989). Roche failed to present any evidence, nor is there any indication in the record, that the trial court lacked subject-matter jurisdiction or jurisdiction over the parties or that it acted in a manner inconsistent with due process. Thus, Rule 60(b)(4) cannot serve as a basis for the trial court's reinstatement order.
The specific ground that on its face provides the most likely fit with Roche's petition is that aspect of Rule 60(b)(5) that authorizes relief from a judgment when a prior judgment upon which it is based has been reversed or otherwise vacated. This Court considered the application of Rule 60(b)(5) in a similar situation in Patterson v. Hays, 623 So.2d 1142 (Ala.1993). The Court in Patterson summarized the facts in that case as follows:
"Larry Dewayne Patterson, Sr., on behalf of himself and his wife Christie Michelle Patterson, who was physically and mentally incapacitated, sued Dr. Leonard John Hays III and (by amendment) Dr. John Hugh Campbell, alleging medical malpractice and seeking compensatory and punitive damages for personal injuries to Christie. Larry Dewayne Patterson, Sr., individually, sued Dr. Hays for loss of consortium. Larry *817 Dewayne Patterson, Jr., the minor child of the Pattersons, sued Dr. Hays and Dr. Campbell for loss of his mother's society and consortium; the trial court dismissed this claim for failure to state a claim upon which relief could be granted.
"Dr. Campbell moved for a summary judgment on all claims against him; the trial court granted his motion and made the summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P. The Pattersons did not appeal from the judgment for Dr. Campbell.
"On October 7, 1991, the case proceeded to trial on the Pattersons' claims against Dr. Hays based on Christie's alleged personal injuries. On October 8, 1991, Christie died; after her death the trial court declared a mistrial and dismissed the jury.... Larry Sr. and Larry Jr. [then] filed an amended complaint.... In count one of this amended complaint, Larry Sr. and Larry Jr. sought compensatory and punitive damages from Dr. Hays for negligently and wantonly causing the personal injuries suffered by Christie in November 1988, as a result of the alleged malpractice, and for causing her to endure pain and suffering until her death on October 8, 1991; in count two they sought punitive damages from Dr. Hays for the wrongful death of Christie. In count three, Larry Sr. sought damages from Dr. Hays for loss of consortium; and in count four, Larry Jr. sought damages from Dr. Hays for loss of his mother's society and consortium.
"Dr. Hays moved to strike or to dismiss the personal injury claims against him and to dismiss the claim by Larry Jr. for loss of his mother's society and consortium. The trial court granted the motions. The case, therefore, proceeded to trial `as a wrongful death case' and on Larry Sr.'s loss of consortium claim. The jury rendered a verdict for Dr. Hays; the trial court entered a judgment on that verdict.... [Larry Sr. and Larry Jr.] did not appeal.
"Approximately a month later, within the time allowed for Larry Sr. and Larry Jr. to appeal, this Court released its opinion in King v. National Spa & Pool Institute, Inc., 607 So.2d 1241 (Ala. 1992), subsequently changing the law in Alabama [regarding the survival of personal injury actions where death subsequently occurs]."
Patterson, 623 So.2d at 1144.
The plaintiffs in Patterson filed a motion for relief from judgment pursuant to Rules 60(b)(5) and (b)(6), based on the change in the subsequent law effected by King v. National Spa & Pool Institute, Inc., 607 So.2d 1241 (Ala.1992). As to the plaintiffs' claim for relief under Rule 60(b)(5), we held:
"Although the holding in King v. National Spa & Pool Institute, supra, substantially changed the law in Alabama, the rule of law announced in King had no retrospective application, but rather affected the King case and `all similar cases pending at the time of [the King] decision.' 607 So.2d at 1246. (Emphasis added [in Patterson.]) This case was not pending at the time of the King decision and, therefore, King has no application to this case.
"Furthermore, `[a] change of law does not always, or perhaps even often, constitute such changed circumstances as to justify relief,' J. Hoffman & S. Guin, Alabama Civil Procedure, § 12.40 (Cumm.Supp.1992). Although relief from a judgment may be granted under Rule 60(b)(5) if a prior judgment upon which the judgment is based has been reversed or otherwise vacated, or if it is no longer equitable that the judgment *818 should have prospective application, `[Rule 60(b)(5) ] does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.' 7 Jerome Wm. Moore, Moore's Federal Practice Par. 60.26(3) (1991). The King decision was totally unrelated to the parties or the circumstances in this case."
Patterson, 623 So.2d at 1145.
The rationale in Patterson concerning Rule 60(b)(5) is directly applicable to this case. The substituted decisions in Cranman and Rizk, which changed the law of state-employee immunity, were issued in cases unrelated to this one, and Roche's claims against Dr. Osborn and Dr. Izenberg, having been disposed of by summary judgments, were not pending when this Court issued those substituted opinions. Rule 60(b)(5) cannot, therefore, serve as a basis for the trial court's order reinstating Roche's claim. Patterson, supra.
Rule 60(b)(6) is the "catchall" provision of the rule; it provides relief from a judgment for "any other reason justifying relief from the operation of the judgment." "Rule 60(b)(6) is an extreme and powerful remedy that should be used only under extraordinary circumstances." Phillips v. General American Life Ins. Co., 652 So.2d 1144, 1144 (Ala.1994). "Rule 60(b)(6) is designed to operate exclusively of the specific grounds listed in (b)(1) through (5), and relief cannot be obtained under (b)(6) if it would have been available under one of the other five subsections." Ex parte American Res. Ins. Co., Inc., 663 So.2d 932, 936 (Ala.1995).
The Court in Patterson, supra, also discussed Rule 60(b)(6):
"[U]nder Rule 60(b)(6), relief is granted only in those extraordinary and compelling circumstances when the party can show the court sufficient equitable grounds to entitle him to relief, but relief should not be granted to a party who has failed to do everything reasonably within his power to achieve a favorable result before the judgment becomes final; otherwise, a motion for such relief from a final judgment would likely become a mere substitute for appeal and would subvert the principle of finality of judgments. See the Comment to Federal Rule of Civil Procedure 60(b). As the Court held in Nowlin v. Druid City Hosp. Bd., 475 So.2d 469 (Ala.1985), Rule 60 is no substitute for an appeal and is not available to relieve a party from his failure to exercise the right of appeal."
623 So.2d at 1145.
In Ex parte Americold Compressors Co., 684 So.2d 140 (Ala.1996), a plaintiff sued her employer for workers' compensation benefits. The trial court awarded her past medical benefits but found that, because her on-the-job injury had healed, she had suffered no permanent injury and she was not entitled to future medical benefits. At the time of the trial court's order, Davis v. City of Tuscaloosa, 494 So.2d 643 (Ala.Civ. App.1986), governed the payment of future medical expenses. In Davis, the Court of Civil Appeals held that in cases where a trial court finds that the plaintiff has suffered no permanent disability as the result of an on-the-job injury, he or she was precluded as a matter of law from recovering any future medical benefits. Id. at 645.
In April 1995, the Court of Civil Appeals expressly overruled its decision in Davis in the case of Robbins Tire & Rubber Co. v. Byrd, 659 So.2d 672 (Ala.Civ.App.1995), "holding that a workers' compensation plaintiff found to have sustained a compensable injury is entitled to future medical *819 benefits, regardless of whether he or she suffers from any permanent disability as the result of the on-the-job accident." Ex parte Americold Compressors Co., 684 So.2d at 142.
In May 1995, the plaintiff in Americold made a "Motion to Enforce Judgment," claiming that the judgment rendered in February 1991 should be reopened to determine future medical expenses based on the change of law effectuated by Robbins. This Court disagreed:
"The principles of res judicata, collateral estoppel, and the finality of judgments prohibit a trial court from disturbing a final judgment. Louisville & N.R.R. v. Atkins, 435 So.2d 1275 (Ala. 1983); State v. Morrison Cafeterias Consolidated, Inc., 487 So.2d 898 (Ala. 1985). In Louisville & N.R.R. v. Atkins this Court held that the doctrine of res judicata would be violated if the law as it evolves were made retroactive to reopen, for another trial, matters that had been laid to rest under theories of liability existing at the time they were tried must not be reopened. 435 So.2d at 1279. This Court, in State v. Morrison Cafeterias, citing Farrior v. New England Mortgage Security Co., 92 Ala. 176, 9 So. 532 (1891), stated that where a party has acted upon the law as clearly declared by a judicial decision, that party will be protected even if the decision is thereafter overruled. Matters laid to rest under theories of liability existing at the time the matters were tried must not be reopened. State v. Morrison Cafeterias, supra, 487 So.2d at 903. To reopen such matters would not only conflict with settled Alabama law, but also would defeat public policy considerations: `"[t]he quieting of litigation; the public peace and repose; respect for judicial administration of the law, and confidence in its reasonable certainty, stability and consistency." Bibb v. Bibb, 79 Ala. 437, 444 (1885).' Stallworth v. Hicks, 434 So.2d 229, 230 (Ala.1983)."
Americold, 684 So.2d at 144.
In this case, Roche did not file any postjudgment motions or seek an appeal from the summary judgments. Roche could have filed a postjudgment motion or an appeal pending the outcome of the application for rehearing in Cranman, which was filed on December 8, 1999, and the application for rehearing in Rizk, which was filed on December 7, 1999.[6] She chose not to do so. As a result, Roche failed to do everything reasonably within her power to achieve a favorable result before the summary judgment became final. Patterson, supra. Accordingly, Roche's inaction in that regard and the compelling interests of finality discussed in Americold, supra, require us to conclude that the reinstatement of her claim cannot rest on the equitable relief afforded by Rule 60(b)(6).

Conclusion
The reinstatement of Roche's claims is not supported by any of the grounds listed under Rule 60(b) for relief from a judgment. The trial court's order setting aside the summary judgment is reversed, and the cause is remanded with directions to the trial court to reinstate the summary judgments for Dr. Osborn and Dr. Izenberg.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur.
*820 JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
I concur with the main opinion in its analysis of why subsections (1), (2), (3), (4), and (6) of Rule 60(b), Ala. R. Civ. P., do not authorize relief for this plaintiff. I think the correct analysis for subsection (5) would be the same as the analysis for subsection (6). I do not think Patterson v. Hays, 623 So.2d 1142 (Ala.1993), governs the applicability of subsection (5) in the case now before us, because the case before us is distinguishable from Patterson. The reason the new rule in King v. National Spa & Pool Inst., Inc., 607 So.2d 1241 (Ala.1992), did not serve as a ground for reinstating the Pattersons' dismissed claims in Patterson v. Hays was that the new rule in King was expressly prospective only. The new rule in Ex parte Cranman, 792 So.2d 392 (Ala.2000), and Ex parte Rizk, 791 So.2d 911 (Ala.2000), cited by the plaintiff now before us, is not prospective only, but is retrospective as well. Had the plaintiff now before us done all she reasonably could to keep her claims alive until Cranman and Rizk became final judgments of this Court, then their retroactive operation would have served as ground for vacating, pursuant to Rule 60(b)(5), the summary judgment entered against her.
NOTES
[1] These injuries would be generally described as bruising and bleeding in the brain, a broken upper right arm, and a broken neck.
[2] An odontoid process is a protrusion of bone at the top of the C2.
[3] A displaced type II odontoid fracture occurs when the odontoid breaks at the base of the C2 and becomes detached.
[4] A halo immobilizes the head and neck through the use of a metal ring with screws that are attached to the skull.
[5] These other doctors were subsequently dismissed on motions filed by Roche.
[6] Filing dates for applications for rehearing are a matter of public record and are readily ascertainable from the office of the clerk of this Court.